RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0221P (6th Cir.)
File Name: 03a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, LOCAL 519,
     *Plaintiff-Appellant,*

     *v.*

UNITED PARCEL SERVICE,
INC.,
     *Defendant-Appellee.*

No. 01-6528

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 00-00222—James H. Jarvis, District Judge.

Argued: March 11, 2003

Decided and Filed: July 7, 2003

Before: MOORE and CLAY, Circuit Judges; LAWSON,
District Judge.[*]

---

[*] The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

## COUNSEL

**ARGUED:** Christopher J. Oldham, BAKER, GULLEY &
OLDHAM, P.A., Knoxville, Tennessee, for Appellant. Larry
W. Bridgesmith, WALLER, LANSDEN, DORTCH &
DAVIS, Nashville, Tennessee, for Appellee. **ON BRIEF:**
Christopher J. Oldham, BAKER, GULLEY & OLDHAM,
P.A., Knoxville, Tennessee, for Appellant. Larry W.
Bridgesmith, Mark W. Peters, WALLER, LANSDEN,
DORTCH & DAVIS, Nashville, Tennessee, for Appellee.

## OPINION

    KAREN NELSON MOORE, Circuit Judge. Plaintiff-
Appellant International Brotherhood of Teamsters, Local 519
("Local 519"), brought a grievance against United Parcel
Service, Inc. ("UPS"), alleging that UPS unjustly discharged
Thomas Loftis ("Loftis"). The arbitrator issued an award in
favor of UPS, finding that because Loftis verbally threatened
another employee in violation of UPS's zero-tolerance policy,
UPS had just cause to terminate Loftis's employment without
notice under the collective bargaining agreements governing
the relationship between UPS and Local 519.

    Local 519 filed a complaint in United States district court
seeking relief from the arbitration order. Both parties filed
motions for summary judgment. When Local 519
subsequently learned that UPS may have fraudulently
procured the arbitration award, it filed a motion to vacate the
arbitration award and a motion to amend its complaint to
allege fraud. The district court granted summary judgment to
UPS and denied the motions filed by Local 519 for summary
judgment, to vacate the arbitration award, and to amend its
complaint. The district court also denied Local 519's motion
to alter or amend this judgment. Local 519 appeals the denial

of these four motions and the grant of summary judgment to UPS.

For the reasons explained below, although we agree with the district court's decision to defer to the arbitrator's interpretation of the collective bargaining agreements, we **VACATE** and **REMAND** for further consideration the district court's denial of Local 519's motions to vacate the arbitration award and to amend its complaint.

## I. FACTS AND PROCEDURE

On April 29, 1999, Kenneth Adkins ("Adkins") reported a workplace altercation, during which his fellow employee Loftis verbally and physically assaulted him and threatened to physically harm his family. Adkins did not mention physical contact when he initially described the incident to his UPS supervisors and the sheriff. However, when he made a second statement two hours after the incident, Adkins alleged physical violence. Loftis denied that any threats or physical touching occurred, and the only witness to the incident corroborated Loftis's denial.

UPS security supervisor David Cole ("Cole") conducted an investigation of the incident for UPS and concluded that Adkins was being truthful. Cole found Adkins credible because he had put himself in an awkward position by placing a complaint against a union brother, provided detailed and consistent statements throughout the investigation, and was visibly shaken by the incident. Moreover, Cole noted that Loftis had repeatedly and consistently displayed a violent temper by threatening physical violence and engaging in physical violence against his co-workers. Loftis was discharged on May 4, 1999.

Loftis filed a grievance against UPS, alleging that he was terminated without just cause. Local 519 sought arbitration on behalf of Loftis, maintaining that Loftis's conduct did not justify summary termination under the collective bargaining agreements governing the relationship between Local 519 and the UPS.

Local 519 and UPS are parties to two collective bargaining agreements, the National Master Agreement and the Supplemental Agreement for the Southern Region ("the agreements"). Pursuant to these agreements, UPS cannot terminate an employee for misconduct unless the employee has received a written warning during the nine months preceding the occurrence upon which termination is based. The proposed termination must be upheld in arbitration before the employee is taken off the payroll. However, summary termination is permitted in the absence of such written warning for seven "cardinal infractions." *See* Appellant's Br. at 5 (referring to the seven specific offenses as "cardinal infractions"); Appellee's Br. at 9 (referring to the same seven offenses as "cardinal sin[s]"). For example, UPS can summarily terminate an employee who "engag[es] in unprovoked physical violence on Company property or while on duty." Joint Appendix ("J.A.") at 17V (Supplemental Agreement Art. 52).

The arbitration of Local 519's grievance focused on whether UPS had just cause to discharge Loftis under the agreements, either because he committed a "cardinal infraction" or because he violated a clearly-established workplace "zero tolerance" policy. At the arbitration hearing, Cole testified that "verbal threats" violate a "zero tolerance" policy posted throughout the workplace, but admitted that they were not an enumerated "cardinal infraction" pursuant to the agreements. J.A. at 96, 97 (Award). Because Loftis had not received a written warning during the preceding nine months, the validity of his termination turns on whether the agreements permit summary termination for conduct other than the enumerated cardinal infractions.

The arbitrator concluded that the agreements did not preclude summary termination for unenumerated reasons, and issued an award for UPS on January 31, 2000:

CONCLUSION:

The Arbitrator must make his decision on the provisions of the Agreement and the "zero-tolerance["] policy established for a safe and secure work environment. . . .

The "zero tolerance" policy that the union has no quarrel with and the grievant is familiar with is not to be taken lightly, if his acts and words violated the policy than [sic] "just cause" exists even though such acts and words are of a short duration they are extremely serious and length of time is not the determing [sic] factor. The policy specifically states, verbal threats is part of the workplace violence criteria and is not to be tolerated. A violation of the workplace violence criteria **will** result in disciplinary action up to and including discharge.

\*\*\*

The testimony of the Supervisor of Security carries great weight as it is his responsibility to investigate matters of this nature in an impartial manner and his recommendations and decisions should not be lightly set aside, unless it can be shown his decision was made in an arbitrary, biased and capricious manner and did not follow the provisions of the Agreement or the zero-tolerance policy.

AWARD:

Based on the evidence of record as a whole the grievant violated the zero-tolerance policy by making verbal threats against K. Adkins, therefore under that policy "just cause" was established and since the decision was not made in an arbitrary, capricious or biased manner the Arbitrator should not substitute his judgement for that of the Company's. The decision to discharge the grievant for "just cause" was proper. The grievance is denied.

J.A. at 106-107 (Award).

Local 519 filed a complaint in the district court, seeking relief from the arbitration award. UPS filed an answer and counterclaim, seeking to uphold the arbitration award. In February 2001, both Local 519 and UPS moved for summary judgment.

After the motions were filed, Adkins recanted his testimony[1] to the arbitrator that Loftis had physically assaulted him. Adkins now maintains that Loftis only verbally threatened him with physical violence. UPS supervisor Sherry Lewis ("Lewis") also submitted an affidavit claiming that Adkins did not tell her that Loftis physically assaulted him when he first described the incident to her. This contradicts Lewis's memorandum written on the day of the incident, which said that Adkins "stated Chip (another car wash person) had kept trying to pull Loftice [sic] off him. When I inguired [sic] about this he said that Loftice had him pinned in a chair." J.A. at 108 (Lewis Mem.). In light of this new information, Local 519 filed a motion to vacate the arbitration award based

---

[1] In an affidavit dated May 3, 2001, Adkins stated that after the confrontation, he called the Sheriff's Department and told a deputy about the argument with Loftis. He stated that he told the sheriff's deputy that he did not have any physical contact with Loftis. Adkins also stated that after the deputy left, Cole called Adkins into his office and told Adkins that he had a "file on Tom Loftis," that he was trying to get rid of Loftis, and that he needed Adkins to change his version of the events to allege that Loftis had physically assaulted Adkins so that he could terminate Loftis under Article 52 of the collective bargaining agreement. J.A. at 259 (Adkins Aff.). Adkins averred that Cole threatened him with the loss of his job and insurance benefits if Adkins did not implicate Loftis in a physical assault.

The district court, in another action arising out of these same events, *Loftis v. United Parcel Service, Inc.*, E.D. Tenn. Case No. 3-01267, referred the matter regarding Adkins's affidavit to the United States Attorney to determine whether Adkins had committed perjury. J.A. at 42 (Mem. Op. at 11 n.2).

The defendant notes that Adkins recanted his prior testimony just four days after he was terminated by UPS when he was discovered sleeping in the rear of a tractor trailer in excess of his permitted break time. *See* J.A. at 292 (Stone Aff.).

on UPS's alleged fraud and sought to amend its complaint to allege UPS's fraud.

The district court denied Local 519's motion for summary judgment, motion to vacate the arbitration award, and motion to amend on September 26, 2001. The district court granted summary judgment for UPS in the same order, reasoning that the arbitrator was "arguably construing or applying" the terms of the agreements and was "acting within the scope of his authority." J.A. at 49 (Mem. Op.) (quotations omitted). Because the verbal threats were the ground for termination, the district court concluded that an examination of the alleged fraud would "serve no useful purpose." J.A. at 50 (Mem. Op.).

Local 519 filed a motion to alter or amend the district court's judgment. The motion was denied, and Local 519 filed a timely notice of appeal.

## II. ALLEGED FRAUD

### A. Vacating the Arbitration Award

Local 519 appeals the district court's denial of its motion to vacate the arbitration award in light of UPS's alleged fraud. When a district court decides to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error. *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995). Under federal law, courts may vacate an arbitration award that was procured by fraud.[2] 9 U.S.C. § 10(a)(1). Courts should be

---

[2] Although the Federal Arbitration Act ("FAA") does not apply to collective bargaining agreements, *see* 9 U.S.C. § 1, federal courts have looked to it for guidance in labor cases brought under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987); *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 19 n.3 (1st Cir. 2001) ("[F]ederal courts rely on FAA cases to inform their LMRA analysis.").

hesitant to do so, however, "in order to protect the finality of arbitration decisions." *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.), *cert. denied*, 459 U.S. 990 (1982). To merit the vacation of the arbitration award, Local 519 must demonstrate (1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration. *Pontiac Trail Med. Clinic, P.C. v. PaineWebber, Inc.*, 1993 WL 288301, at **3 (6th Cir. July 29, 1993); *Forsythe Int'l S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1022 (5th Cir. 1990); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988). Because the district court made no findings about whether there was clear and convincing evidence of fraud or whether the alleged fraud was discoverable during or prior to the arbitration, we consider only the district court's conclusion that the alleged fraud was not materially related to an issue involved in the arbitration.

This court has not discussed the content of the material-relationship requirement in the context of vacating an arbitration award. The Ninth Circuit requires a "nexus between the alleged fraud and the basis for the panel's decision." *Forsythe*, 915 F.2d at 1022. Thus, when an arbitrator "hears the allegation of fraud and then rests [his] decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id.* However, a movant need not "establish that the result of the proceedings would have been different had the fraud not occurred." *Bonar*, 835 F.2d at 1383.

Local 519 maintains that UPS committed fraud through Cole by coercing Adkins to testify falsely that Loftis physically assaulted Adkins. The arbitrator found that Loftis made verbal threats against Adkins, but the arbitrator did not find that Loftis engaged in physical violence. Therefore, in one respect, UPS and the district court are correct that any false allegations of physical violence could not have impacted the arbitrator's decision to deny Loftis's grievance.

Nonetheless, the alleged fraud perpetrated on the arbitrator is clearly connected to an issue material to the arbitration.

The fraud alleged by Local 519 may have impacted not only on the arbitrator's ultimate decision to grant or deny relief to Loftis, but also may have directly affected the arbitrator's factual findings. The arbitrator relied heavily on Cole's testimony:

> The testimony of the Supervisor of Security carries great weight as it is his responsibility to investigate matters of this nature in an impartial manner and his recommendations and decisions should not be lightly set aside, unless it can be shown his decision was made in an arbitrary, biased and capricious manner and did not follow the provisions of the Agreement or the zero-tolerance policy.

J.A. at 107 (Award). The arbitrator essentially deferred to Cole's findings, while explicitly conditioning his deference on those findings not being arbitrary, biased, or capricious. If true, Local 519's allegations of fraud would demonstrate that Cole's investigation was both arbitrary and biased because it was less an investigation than an effort to manufacture a story.[3] Thus, Local 519's allegations of fraud were materially related to disputed issues involved in the arbitration.

In spite of the relationship between the alleged fraud and the matters decided in the arbitration, this court cannot determine whether the arbitration award should be vacated because the district court made no factual determination about whether Local 519 has proved the other elements necessary to

---

[3]Although "[f]ailure to consider credibility evidence is not a ground for vacation of an award," *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir. 1981), in this case the evidence suggests that the arbitrator deferred to the findings of an investigator who did not actually conduct an investigation.

vacate an arbitration award for fraud.[4] Therefore, we remand to the district court to determine whether there is clear and convincing evidence of the alleged fraud and whether the alleged fraud was discoverable prior to or during the arbitration. *See Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (remanding fraud issue to district court "to assess the evidence under the proper standard" because the district court "did not state whether [the complainant] had proven fraud by clear and convincing evidence, nor did the court address whether [the complainant] could have discovered the fraud prior to the arbitration proceedings by exercising due diligence").

**B. Motion to Amend**

Local 519 also maintains that the district court abused its discretion by not allowing Local 519 to amend its complaint by adding a new paragraph to allege fraud:

> 16. Alternatively, Plaintiff avers that the Award of the arbitrator was procured by fraud or undue means of the defendant, UPS.

J.A. at 300 (Mot. to Amend). Pursuant to Federal Rule of Civil Procedure 15(a), a court should freely give leave to amend a complaint "when justice so requires." When a district court denies a plaintiff's motion for leave to amend his complaint, we generally review the decision for an abuse

---

[4]According to Local 519, Adkins's and Lewis's affidavits provide clear and convincing evidence of fraud. However, because these affidavits merely contradict earlier statements by Adkins and Loftis, we have to agree with UPS that they do not necessarily constitute clear and convincing evidence.

Local 519 also argues that it exercised due diligence because neither Adkins nor Cole confessed the fraud during the arbitration. UPS counters this argument by contending that Local 519 failed to subpoena Lewis during the arbitration, even though the union was already aware of Lewis's allegations of fraud. This indicates that there is a factual dispute between the parties about Local 519's discovery of the fraud.

of discretion. *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 783 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). However, when the district court bases its decision to deny leave to amend on a legal conclusion that amendment would be futile, we review the decision de novo. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

Local 519 sought leave to amend its complaint more than one year after the original complaint was filed because it believed amendment was necessary to conform to recently discovered evidence of fraud. The district court denied Local 519's motion, reasoning,

> Arbitrator Coleman did not base his award in favor of UPS on any finding of physical violence by Loftis against Adkins. It naturally follows . . . that any alleged fraud in Adkins' original testimony on this particular issue had no impact whatsoever on the award ultimately entered by Arbitrator Coleman. Any amendment to plaintiff's complaint making this allegation would therefore be futile.

J.A. at 51 (Mem. Op.). Because the district court cited only one reason for denying Local 519's request to amend — futility — we review this decision de novo.

For the reasons discussed in Part A, *supra*, we reject the district court's reasoning about the futility of amendment. Although the arbitrator did not base his award on a finding of physical violence, the alleged fraud may have impacted his decision. We remand to the district court to consider whether there are any other grounds for denying Local 519's motion to amend its complaint, such as undue delay or undue prejudice to UPS. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (recognizing as legitimate grounds for denying a party's motion to amend "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment").

## III.  THE COLLECTIVE BARGAINING AGREEMENTS

Local 519 argues that the district court erred by deferring to the arbitrator's interpretation of the terms of the collective bargaining agreements. Although we have decided to remand this case on other grounds, we address this issue because the district court on remand may decide not to vacate the arbitration award for fraud or to allow Local 519 to amend its complaint. Because the district court decided to defer to the arbitrator's interpretation of the collective bargaining agreements in the context of ruling on a motion for summary judgment, we review the district court's determination de novo. *Burchett v. Keifer*, 310 F.3d 937, 941 (6th Cir. 2002). We conclude that the district court properly deferred to the arbitrator's interpretation of the agreements to allow summary termination for conduct other than the seven "cardinal infractions."

We apply a narrow standard of review for labor arbitration awards: "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (citation omitted); *Gen. Truck Drivers, Local 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 437 (6th Cir. 1999), *cert. denied*, 528 U.S. 1137 (2000); *AP Parts Co. v. UAW*, 923 F.2d 488, 491 (6th Cir. 1991) ("[T]his Court is very reluctant to vacate an arbitrator's award."). We defer to the arbitrator's finding of facts and his interpretation of a collective bargaining agreement. *Misco*, 484 U.S. at 37-38. This reflects an explicit policy preference for the private settlement of labor disputes under federal law. *See* 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or

interpretation of an existing collective-bargaining agreement.").

The construction and interpretation of collective bargaining agreements is a job for labor arbitrators and not the federal judiciary. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). However, arbitrators are bound by certain limitations as well:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Misco*, 484 U.S. at 38. Local 519 maintains that the arbitrator did not "even arguably constru[e] or apply[] the contract" and acted outside "the scope of his authority" because he allowed UPS to terminate Loftis under a company policy rather than a term of the collective bargaining agreements. *Id.*; *see Int'l Ass'n of Machinists, Local 2770 v. Lourdes Hosp., Inc.*, 958 F.2d 154, 157 (6th Cir. 1992).

The collective bargaining agreements list seven infractions that would merit termination without warning, and state that all other terminations must be preceded by a written warning during the previous nine months. Although verbal threats are not one of the seven infractions, the arbitrator concluded that Loftis's violation of the zero-tolerance policy constituted just cause for his termination without prior warning. The arbitrator's decision assumes that, as UPS argues, the seven "cardinal infractions" allowing summary dismissal are not exclusive. The district court agreed that the arbitrator simply construed the collective bargaining agreement and thus acted within the scope of his authority.

Federal law governs the enforcement and interpretation of collective bargaining agreements under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1976), but traditional rules of contract interpretation apply insofar as they are consistent with federal labor policies. *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983), *cert. denied*, 465 U.S. 1007 (1984). To discern the intent of the parties, we consider the explicit language of a collective bargaining agreement in the context that gave rise to its inclusion and in context of the entire agreement. *Id.* The agreement "must be construed so as to render [no term] nugatory and [to] avoid illusory promises." *Id.* at 1480. We can look to other words in the agreement to resolve ambiguities. *Id.*

We have adopted a four-pronged test to determine whether an arbitration award fails to draw its essence from a collective bargaining agreement. The award fails when:

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.

*UAW v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002) (quotation omitted).

Local 519 maintains that the arbitrator's conclusion that the agreements permit summary discharge for threats of physical violence violates the express terms of the agreements and imposes additional requirements on employees who would otherwise expect a warning before dismissal for such an infraction. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement." *Enter. Wheel*, 363 U.S. at 597. The language of Article 52 does not indicate whether the listed "cardinal infractions" are exclusive or not exclusive. *See* Appellant's Br. at 26 (noting the

absence of modifiers such as "including, but not limited to," "conduct such as," or "the following is not an exclusive list"); Appellee's Br. at 29 ("As a matter of basic contract interpretation, conspicuously absent from Article 52 are any limiting terms which would indicate the list is all-inclusive."). The arbitrator concluded that the agreements would recognize violation of an established workplace policy as just cause for termination. In doing so, he arguably interpreted Article 52's list of conduct meriting termination without notice as a non-exclusive list. Because it is not our role to question an arbitrator's interpretation of an agreement where the arbitrator is "arguably construing or applying" the contract terms and thus "acting within the scope of his authority,"[5] we defer to the arbitrator's interpretation, even if we disagree with it. *Misco*, 484 U.S. at 38.

Local 519 also maintains that the district court's conclusion that the arbitrator implicitly found that verbal threats were "cardinal infractions" indicates that the arbitrator read additional terms into the agreement. Local 519 portrays the zero-tolerance policy as an informational policy that was never part of the collective bargaining agreement negotiation process. However, it is crucial to recognize that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law — the practices of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960); *see Haw. Teamsters Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1182

---

[5] As the Ninth Circuit has explained, Local 519's "position would result in the exception swallowing the rule; any time an arbitrator arrived at a result that a party believes to be the result of faulty contract interpretation, it could obtain judicial review of the merits by phrasing its disagreement with the arbitrator's award as a complaint that he disregarded the contract and 'dispensed with his own brand of industrial justice.'" *Haw. Teamsters Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1183 (9th Cir. 2001).

(9th Cir. 2001) (explaining that a "straightjacket approach to contract interpretation would not . . . take into account other cognizable sources of federal labor law, such as the law of the shop, the industrial common law, and the like, nor would it appropriately recognize the role and decision of the skilled labor arbitrator"). Because the contract is ambiguous about whether the seven "cardinal infractions" are exclusive,[6] the arbitrator appropriately considered "'the practices of the shop' that have developed between the parties in the day-to-day administration of the collective bargaining agreement." *Detroit Coil Co. v. Int'l Ass'n of Machinists, Lodge 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840 (1979); *NLRB v. Constr. & Gen. Laborers' Union Local 534*, 778 F.2d 284, 289 (6th Cir. 1985) (describing the law of the shop as "a composite of the history and practices of the industry and the disputing company and union" (quotation omitted)).

UPS's policy of "zero-tolerance for workplace violence and sexual harassment" applied to all UPS employees and was known to Loftis. The policy defined workplace violence to include "verbal threats" and explained that such conduct "*will* result in disciplinary action up to and *including dismissal*." J.A. at 133 (Policy). The arbitrator clearly recognized this policy as a practice "developed between the parties in the day-to-day administration" of their agreement. *Detroit Coil Co.*, 594 F.2d at 579. The arbitrator implicitly interpreted the agreement to allow termination without notice for infractions other than the seven "cardinal infractions" when he determined that just cause for termination under Article 48 of

---

[6] "We recognize that an arbitrator 'may of course look for guidance from many sources,' including 'the industrial common law — the practice of the industry and the shop,' but when the collective bargaining agreement answers the question submitted to the arbitrator in clear and unambiguous language, the arbitrator errs if he looks beyond the contract and uses extraneous considerations to render the contract's clear language ineffective." *Morgan Servs., Inc. v. Local 323, Amalgamated Clothing & Textile Workers Union,* 724 F.2d 1217, 1223-24 (6th Cir. 1984) (citations omitted).

the agreement existed when Loftis violated the policy. Under this interpretation of the agreement, the arbitrator's finding of just cause to terminate Loftis neither violated the express terms of the agreement nor added additional terms to the agreement.

Finally, Local 519 argues that because the arbitrator's award was based on the zero-tolerance policy, it is not derived from the agreement and instead reflects the arbitrator's considerations of fairness and equity. Contrary to Local 519's assertion that the arbitrator did not use the agreement to uphold Loftis's termination, the arbitrator's discussion of the zero-tolerance policy occurred entirely in the context of his effort to determine whether just cause for termination existed under the agreement. Therefore, the arbitrator's decision was arguably supported by and derived from the agreement. Local 519 also suggests that the arbitrator's evaluation of witness credibility demonstrates that he based his decision on general notions of fairness. Even if the arbitrator's factual determinations were at issue, however, we would defer to his assessment of the evidence. Therefore, we reject Local 519's argument that the arbitrator's award was derived from general considerations of fairness and equity rather than the collective bargaining agreement.

Because we conclude that the arbitration award did not fail to draw its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of justice, we agree with the district court's decision to defer to the arbitrator's interpretation of the agreements.

## IV. CONCLUSION

For the reasons explained above, we **VACATE** the district court's judgment denying Local 519's motions to vacate the arbitration award and to amend its complaint and **REMAND** those matters for further consideration. On remand, the district court should determine whether Local 519 has proven fraud by clear and convincing evidence and whether Local

519 exercised due diligence in discovering the fraud. The district court should also decide whether factors other than futility support the denial of Local 519's motion to amend its complaint. In light of these considerations, the district court should decide whether to vacate the arbitrator's award. In the event that the district court on remand decides neither to vacate the arbitration award for fraud nor to allow Local 519 to amend its complaint, the district court may properly grant summary judgment to UPS.