Mark J. Steichen, Plaintiff-Appellant,

v.

Wayne Hensler, Defendant-Respondent.

Court of Appeals

*No. 2003AP2990. Submitted on briefs September 8, 2004.
—Decided May 5, 2005.*

2005 WI App 117

(Also reported in 701 N.W.2d 1.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark J. Steichen* of *Boardman, Suhr, Curry & Field, LLP*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jennifer Weber* and *Vicki Zick* of *Zick & Weber Law Offices, LLP*, Johnson Creek.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. This appeal involves an attorney fee arbitration award obtained under the State Bar of Wisconsin's fee arbitration program. The circuit court declined to confirm a fee arbitration award in favor of attorney Mark Steichen against his former client, Wayne Hensler. Instead, the court entered a judgment vacating the award after determining that Steichen had obtained the award by fraud. *See* Wis. Stat. § 788.10(1)(a) (2003–04).[1] Steichen claims the circuit court erred by applying the wrong legal standards in denying his motion for summary judgment and in granting judgment to Hensler. We agree that the circuit court erred by not confirming the arbitration award on summary judgment. Accordingly, we reverse the appealed judgment and direct that a judgment confirming the award be entered on remand.

## BACKGROUND

¶ 2. Wayne Hensler retained attorney Mark Steichen in March 2001. At the time, Hensler was involved in pending litigation with his ex-wife relating to a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

generation-skipping trust he had established during his marriage. On June 12, 2001, Steichen wrote to Hensler, informing him as follows:

> As you and I have discussed, you have decided to cooperate with [Hensler's ex-wife] in investigating and probably bringing a lawsuit against [the trustee], rather than fighting with [her] in the divorce case over the trust . . . .
>
> . . . .
>
> At the time that you hired me and this firm to represent you, you were on the same side as [the trustee] and the goal was to defend you and the trust against [Hensler's ex-wife]'s claims. Now your goals and intentions have changed to pursuing a claim against [the trustee]. I have learned recently that one of my partners represents Mark Williams, who was involved in the preparation of the . . . [t]rust. This was not an issue when you were on the same side as [the trustee]. However, now that your goal is to pursue a claim against [the trustee], there is the potential that Mark Williams could be made a party to such a lawsuit . . . .

The letter went on to explain that because of the apparent or actual conflict of interest, Steichen and his firm could not continue to represent Hensler.

¶ 3.  Hensler refused to pay Steichen's final bill for $1,727.75 in fees and disbursements. He accused Steichen in August 2001 of being a liar, saying that "I wanted you to work with [an attorney who represented Hensler in the divorce] after he told me . . . that [the trustee] lied to me when they sold me the trust."

¶ 4.  The parties agreed to submit the fee dispute to the State Bar of Wisconsin's fee arbitration program. In his application for fee arbitration, in response to the question, "For what type of case of legal services was the

attorney employed?" Hensler wrote in "divorce." Hensler described the "nature of the dispute" and his position as follows:

> On or about May (sic) 7, 2001, I retained Atty Steichen as co-counsel . . . for my divorce. A short time later, Atty Steichen informed me that he could not represent me due to a conflict of interest. Apparently, Atty Steichen's office represented the opposing party in my case & could not represent me. He performed no legal work for me.

Finally, Hensler checked "yes" below the question, "DO YOU AGREE TO BE BOUND BY THE RESULT OF THE ARBITRATION?"

¶ 5. In his response, Steichen also agreed to be bound by the result of the fee arbitration. Steichen explained that Hensler had been a client of Steichen's firm and that their oral agreement was that Hensler would be billed "on the same hourly basis that we had in the past." Steichen confirmed that he was retained for a matter "relating to a divorce action that was pending." The divorce had been granted, but Hensler's ex-wife's request "to dissolve a trust the two had entered into" remained pending. According to Steichen, Hensler's ex-wife "had made serious allegations of abuse and undue influence" against Hensler as grounds for dissolving the trust. Steichen stated in the response that the initial purpose of his representation was two-fold:

> First, [Hensler] felt that he had been treated unfairly in the divorce judgment. He wanted me to review the matter to see if it had been handled appropriately . . . and if any changes could be made in the division of assets and liabilities. Second, he asked me to help in the defense of the trust matter. Mr. Hensler wanted to preserve the trust to keep the assets from being subject

to division as marital property and to ensure that they would be available for his grandchildren.

¶ 6. Steichen also asserted in his fee-arbitration response that he "spent considerable time listening to Mr. Hensler about what he felt was unfair about the divorce outcome, going through the file, and discussing it with [Hensler's divorce counsel]." Steichen concluded that no purpose would be served by moving to reopen the divorce judgment, and stated that he spent considerable time with Hensler explaining the provisions of the divorce judgment and his conclusions regarding them. As to the trust matter, Steichen asserted that, soon after his engagement, "the case took a change in course." Hensler's ex-wife's new counsel "offered essentially to withdraw their claims against Mr. Hensler regarding the trust if Mr. Hensler agreed to cooperate in a fraud action against the company that administered the trust."

¶ 7. At about this same time, according to Steichen's response, "Hensler's attitude toward the trust also changed considerably as he began to receive statements from the trust company showing large fees and declines in the value of the trust." Steichen stated that, at that point, he explained to Hensler the potential conflict noted in the June 12th letter. Steichen asserts that he terminated his representation of Hensler after assisting "in negotiating an agreement" with Hensler's ex-wife's counsel for dismissal of her claims against him regarding the establishment of the trust in return for Hensler's cooperation in pursuing a claim against the trust company. He noted that Hensler's ex-wife's claims against Hensler regarding the establishment of the trust were in fact dismissed in July

2001, "without further expense or risk to Mr. Hensler. I considered this a very successful outcome for Mr. Hensler."

¶ 8. The fee dispute was then submitted to an arbitrator. The circuit court record contains no transcript of the arbitration proceedings. The arbitrator noted in his decision that both parties had agreed in writing to arbitrate the dispute, that both appeared in person and gave sworn testimony and that each "was given the opportunity to cross-examine the other." The arbitrator explained in his "statement of the dispute" that Hensler had retained Steichen "for the purpose of opposing the request to invalidate the Trust." The arbitrator awarded Steichen $1,727.75, the full amount reflected on the final statement to Hensler. The award was based on the following findings by the arbitrator:

A. Mr. Hensler retained Mark Steichen to represent him.

B. Mr. Hensler received regular and detailed billing statements with regard to services rendered.

C. The services rendered appear to have been necessary and within the scope of representation of Mr. Hensler by Attorney Steichen.

D. A change in strategy resulted in the discovery of a conflict of interest which required Attorney Steichen to cease his representation of Mr. Hensler.

E. No complaints or disputes or questions regarding the billing for attorney's fees were raised until after the termination of Attorney Steichen's representation of Mr. Hensler.

F. Mr. Hensler was properly billed for services rendered through June 12, 2001. Mr. Hensler was credited with the $1,000 payment he made.

¶ 9. Steichen filed a small claims action to confirm the fee arbitration award. Hensler answered, alleging that Steichen had procured the award by "fraud or undue means." Hensler asserted that Steichen "attested at fee arbitration" that Steichen had "first became aware on June 12, 2001" of the potential conflict of interest, which Hensler asserted was "simply untrue." Hensler alleged that he "immediately told [Steichen] that I wanted to challenge the trust" when he first met with Steichen in March 2001, and that he never said he wanted "to challenge my wife's claim against me," noting that he already had an attorney in the divorce and "did not need another one."

¶ 10. Hensler attached to his answer a copy of a billing from Steichen's firm containing an entry for March 28, 2001, for a telephone conference with Hensler's ex-wife's counsel "re: meeting re: cooperation in case against [the trust company]." Hensler also attached a copy of a letter from his ex-wife's counsel to her, dated March 30, 2001, saying that the attorney had "received several calls from Attorney Mark Steichen," the substance of which the letter describes as follows:

> Mark indicates that he would be prepared to meet with me either Monday or Tuesday of next week to discuss coming on board against [the trust company]. I have not set any meeting or discussed anything with him other than the possibility of a meeting . . . . I am also aware of the fact that [Hensler's divorce attorney] has told [the trust company's attorney] that [Hensler] now plans to turn on [the trust company]. The die is cast . . . . Having [Hensler] turn on [the trust company] could be immensely helpful and would likely enhance the chances for a good settlement or a good litigation result, if properly handled.

Hensler asserted in his answer that these attachments

showed that "Attorney Steichen lied at arbitration. He knew about my intent against [the trust company]. His office had a conflict of interest, they dropped the ball . . . ."

¶ 11.   Steichen moved for summary judgment. The parties' submissions on summary judgment are described below in our analysis. The circuit court denied Steichen's motion after concluding that Hensler had "raised enough here to at least let it go to trial on the question of fraud." The court subsequently denied Steichen's motion to reconsider its summary judgment ruling, again concluding that factual disputes on the question of fraud precluded summary judgment. Following trial, the court found that Steichen had procured the fee arbitration award through fraud.[2] It entered judgment vacating the fee arbitration award and granting Hensler statutory costs. Steichen appeals.

## ANALYSIS

¶ 12.   Before considering whether the circuit court erred in vacating the fee arbitration award, we must

---

[2] The case was actually tried to a jury on Hensler's demand, and the jury answered "yes" to the following verdict question:   "Did Mark J. Steichen procure the arbitration award through fraud?" While addressing Steichen's post-trial motions, the circuit court concluded that a jury trial may not have been proper in an action to confirm or vacate an arbitration award. The court noted, however, that it had presided at trial, heard the testimony and reviewed the exhibits. It then adopted "the finding of fact that the jury made," stating that the court agreed with the verdict and would have reached the same conclusion had the issue of fraudulent procurement been tried to the court. Steichen does not argue that the appealed judgment must be set aside because Hensler's fraud claim was tried before a jury. We therefore do not address the issue.

determine the legal standards governing this dispute. The high degree of judicial deference to which an arbitration award is entitled when a party seeks to vacate it is well-established in Wisconsin. We recently described our deferential standard of review as follows:

> We review the arbitrator's award de novo and decide independently whether the arbitrator's award should be confirmed in whole or in part, owing no deference to the circuit court's conclusions. Our review of an arbitration award is highly deferential; we may disturb the award only if we conclude the arbitrator committed one of a limited number of transgressions. "[T]he court will not overturn the arbitrator's decision for mere errors of law or fact, but only when 'perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy.' "

> Thus, we are not to substitute our judgment for that of the arbitrator, and we may vacate an award only if it violates the foregoing common law standards or those established by statute.

*Winkelman v. Kraft Foods, Inc.*, 2005 WI App 25, ¶¶ 7–8, 279 Wis. 2d 335, 693 N.W.2d 756 (citations omitted).

■

¶ 13.   Among other statutory grounds for vacating an arbitrator's award, a court "must make an order vacating the award . . . [w]here the award was procured by corruption, fraud or undue means." WIS. STAT. § 788.10(1)(a). Even where a statutory ground is alleged, however, the "arbitrator's award comes before us clothed with a presumption that it should be confirmed, and [Hensler] bears a heavy burden in attempting to

convince us that . . . the amount[] the arbitrator awarded to [Steichen] should be set aside." *Winkelman*, 279 Wis. 2d 335, ¶ 9.

¶ 14.   The parties agree that no Wisconsin precedent addresses the showing a party needs to make in order to succeed in having a court vacate an arbitration award on the grounds that it was procured by fraud. They also agree that, when construing Wis. Stat. § 788.10, we may look for guidance to precedents interpreting the Federal Arbitration Act. *See Diversified Mgmt. Servs., Inc. v. Slotten*, 119 Wis. 2d 441, 446, 351 N.W.2d 176 (Ct. App. 1984) ("Federal cases construing the federal act . . . are persuasive authority for our interpretation of sec. 788.10."). Finally, the parties further agree that the necessary elements of "procurement by fraud" for purposes of a challenge to an arbitration award have recently been well stated in *International Brotherhood of Teamsters, Local 519 v. United Parcel Service, Inc.*, 335 F.3d 497 (6th Cir., 2003).

¶ 15.   We thus turn to *Teamsters Local 519*, where the court described what the challenger of an arbitration award on the basis of procurement by fraud must establish:

> Under federal law, courts may vacate an arbitration award that was procured by fraud. Courts should be hesitant to do so, however, "in order to protect the finality of arbitration decisions." To merit the vacation of the arbitration award, Local 519 must demonstrate (1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration.

*Id.* at 503 (citations and footnote omitted). Both parties also cite *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d

766

32, 34–35 (2d Cir. 1951), where the court gave the following guidance regarding a claim that perjured testimony before an arbitrator constituted procurement of an arbitration award by fraud: "[S]ince [perjury] necessarily raises issues of credibility which have already been before the arbitrators once, the party relying on it must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time." *Id.* at 35.

¶ 16. We agree with the parties that the cited federal authorities provide a proper standard for determining whether Hensler met his burden to show Steichen procured the fee arbitration award by fraud. We next consider whether, given the cited elements of procurement by fraud, the circuit court erred in permitting Hensler's claim to survive summary judgment. Put another way, our inquiry is whether, based on the record on summary judgment, Steichen was entitled to a judgment confirming the arbitration award, notwithstanding Hensler's claim that it was procured by fraud.

¶ 17. We review an order for summary judgment de novo, applying the same standards as the trial court. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). Summary judgment is proper when the pleadings, answers, admissions and affidavits show no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 558, 297 N.W.2d 500 (1980).

¶ 18. We first examine the parties' pleadings to see whether they sufficiently state a cognizable claim and a defense to that claim. Steichen's complaint sought confirmation of the fee arbitration award. He attached copies of Hensler's application for arbitration and the

arbitrator's decision, both of which we have described above. We are satisfied that Steichen's complaint properly states a claim for confirmation of the fee arbitration award.

¶ 19. Hensler's answer raises the issue of procurement by fraud, and it essentially pleads a counterclaim for vacation of the award on that ground. The fraud Hensler alleges is that Steichen falsely "attested at fee arbitration that he first became aware on June 12, 2001 of a potential conflict he would have regarding his representation and potential claims I may have against" the trust company. Hensler attaches a billing statement from Steichen's firm showing charges for telephone conferences on March 16 and 19, 2001, that refer to "issues for dealing with" the trust company. There is also an entry for March 28 for a phone conference with Hensler's ex-wife's attorney regarding a "meeting re: cooperation in case against" the trust company. Hensler also attached the previously quoted excerpt from that attorney's letter of March 30, 2001.

¶ 20. We conclude that Hensler's answer pled a recognized ground for vacating an arbitration award under WIS. STAT. § 788.10(1)(a), procurement by fraud. Issue was thus joined, with Steichen being entitled to confirmation of the award unless Hensler could prove his sole defense—that the award was procured by fraud in the form of perjury by Steichen during the arbitration proceedings. *See Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982) (noting that "[o]btaining an award by perjured testimony constitutes fraud").

¶ 21. We thus turn to the parties' submissions on summary judgment. As we have noted, the record contains no transcript of testimony given by either of the parties at the arbitration hearing. Steichen submitted an affidavit in which he averred, among other

768

things, that he had "testified under oath that Mr. Hensler had initially retained me to represent him to review his divorce judgment for potential modification or appeal and to defend claims brought by his former spouse . . . against him and the Hensler Family Trust." Steichen also averred that "Mr. Hensler also testified at the hearing and claimed that he had retained me at the outset only for the purpose of suing" the trust company. Steichen's affidavit identifies the following documents submitted with the affidavit: the arbitrator's decision and award; Hensler's application for fee arbitration; Steichen's response to the application, including attached copies of several letters Steichen wrote or copied to Hensler in June and July of 2001 (including the previously quoted letter of June 12, 2001) and Hensler's August response stating his refusal to pay the final bill. The affidavit also attaches a "new matter memo" from Steichen's firm dated March 13, 2001, which identifies Hensler's ex-wife as an "other party" and the trust company as an "interested non-party."

¶ 22. We are satisfied that Steichen's submissions in support of his summary judgment motion present a prima facie case for confirmation of the award. His affidavit and attachments show that the parties agreed to resolve their attorney fee dispute by arbitration and agreed to be bound by the arbitrator's award. The award itself establishes that the arbitrator conducted a hearing following which he awarded Steichen $1,727.75. We thus next examine Hensler's responsive submissions to see whether they establish, or at least place in dispute, each of the three elements Hensler was required to prove in order to establish that Steichen procured the arbitration award by fraud. *See Moulas v. PBC Productions Inc.*, 213 Wis. 2d 406, 410–11, 570

N.W.2d 739 (Ct. App. 1997) (explaining that when a moving party establishes a prima facie case of entitlement to requested relief, "the opposing party—to avoid summary judgment—must set forth specific facts showing that there is a genuine issue of material fact for trial"). Specifically, "the opponent does not have the luxury of resting upon its mere allegation or denials of the pleadings, but must advance specific facts showing the presence of a genuine issue for trial." *Id.* at 411.

¶ 23.  Hensler averred that he contacted Steichen in "early March 2001 . . . to discuss filing a lawsuit against [the trust company] and/or its agents for misrepresentation," and further that "Atty. Steichen agreed to represent me in this regard." Hensler attached several invoices from Steichen's firm itemizing legal services and disbursements from March 2 through June 12, 2001; the June 12 letter from Steichen to Hensler; and the excerpt from Hensler's ex-wife's attorney's letter of March 30, 2001. Hensler also submitted an affidavit from that attorney in which the attorney averred that the "information I conveyed [in the excerpted paragraph] of the letter was based in part on conversations I had with Attorney Mark Steichen."

¶ 24.  Nowhere, however, in Hensler's affidavit or its attachments does he aver or provide documentation regarding what Steichen testified at the arbitration hearing. In Hensler's circuit court brief opposing summary judgment, Hensler's attorney asserted that "Steichen testified that he first discovered that Hensler wanted to pursue an action against [the trust company] on or about June 12, 2001." This assertion, however, like Hensler's similar assertion in his answer, are not sufficient to place a fact in dispute—an evidentiary

submission is required. *See* Wis. Stat. § 802.08(3); *Hopper v. City of Madison*, 79 Wis. 2d 120, 130–31, 256 N.W.2d 139 (1977).

¶ 25. Hensler's counsel supported her assertion in the circuit brief with a citation to "Steichen Aff. ¶ 6, Ex. B." That paragraph of Steichen's affidavit, in its entirety, avers the following:

> 6. A copy of my response to the fee arbitration is attached hereto as Exhibit B. At a hearing on September 11, 2002, I testified under oath that Mr. Hensler had initially retained me to represent him to review his divorce judgment for potential modification or appeal and to defend claims brought by his former spouse . . . against him and the Hensler Family Trust. Mr. Hensler also testified at the hearing and claimed that he had retained me at the outset only for the purpose of suing [the trust company].

Exhibit B is a copy of Steichen's response to Hensler's application for fee arbitration, which we have previously described and quoted. Steichen's response, which preceded the arbitration hearing by many months, sets forth his understanding of the scope of his representation of Hensler and his reason for terminating that representation. Nowhere in Steichen's affidavit or Exhibit B does Steichen say that he "testified that he first discovered that Hensler wanted to pursue an action against [the trust company] on or about June 12, 2001," as Hensler and his counsel have asserted.

¶ 26. In short, we cannot conclude from the record on summary judgment that Steichen testified falsely at the arbitration hearing, or that the record creates a material dispute regarding Steichen's testimony. Hensler submitted no evidence of what Steichen testified at the arbitration hearing, pointing to only

Steichen's own averment that each party testified as to their respective views of the initial scope of Steichen's representation. Steichen's undisputed averment is that he testified he was first retained to review Hensler's divorce judgment and defend his ex-wife's claims against the trust. Steichen's testimony was thus consistent with the position he had laid out in his response to Hensler's application for arbitration, as well as with Steichen's explanation to Hensler in his letter of June 12, 2001.[3] At most, Hensler's submissions on summary judgment show that, early on in his representation of Hensler, Steichen discussed with his client and other attorneys involved in the case the possibility of Hensler's joining with his ex-wife in a claim against the trust company. That fact neither shows nor places in dispute that Steichen testified falsely regarding the initial scope of his representation of Hensler.

¶ 27.   Not only do Hensler's submissions opposing summary judgment fail to establish or place in dispute that Steichen committed fraud in the form of perjured testimony during the arbitration proceedings, the summary judgment record establishes that, even if Steichen testified "falsely" from Hensler's perspective, the substance of Steichen's position and his testimony was or should have been well known to Hensler prior to the arbitration hearing. Steichen's letter of June 12, 2001, and his response to Hensler's arbitration application plainly lay out Steichen's view of the initial scope of his representation, as well as his position that Hensler's

[3] Steichen's testimony was also consistent with what Hensler himself said in his arbitration application, where he identified "divorce" as the type of case for which he retained Steichen and stated that he had "retained Atty. Steichen as co-counsel . . . for my divorce."

desire to cooperate with his ex-wife in pursuing the trust company evolved during the three months that Steichen represented Hensler. We thus conclude Hensler has also failed to show or place in dispute that, with due diligence, he could not have discovered the alleged fraud during or prior to the arbitration. *See Teamsters Local 519*, 335 F.3d at 503.

¶ 28. Hensler makes much of the March 30, 2001 letter to his ex-wife from her then attorney containing the paragraph saying that the attorney had conferred with Steichen by phone about possibly meeting to discuss Hensler's "coming on board against" the trust company. Hensler averred that he came into possession of the letter only after the arbitration decision, when his daughter provided him a copy of it. Hensler argues that this "newly discovered evidence" was thus not available to him prior to or during the arbitration hearing. He apparently believes that (1) the letter proves, or at least raises a reasonable inference, that Steichen lied at the arbitration hearing about when he became aware of Hensler's desire to join forces with his ex-wife against the trust company, and (2) Hensler's lack of access to the letter prior to arbitration precluded him from exposing Steichen's "fraud." Neither contention is correct.

¶ 29. First, as we have noted, there is nothing in the record showing precisely what Steichen may have testified in this regard. Second, Steichen's billing statements to Hensler disclose that the topic of Hensler's possible "cooperation in [a] case against" the trust company came up at least as early as March 28th, and that discussions of that possibility continued through April and into May. The billing statements were available to Hensler before the arbitration and could have been used by him to support his claim before the

arbitrator that he had retained Steichen from the beginning to sue the trust company.

¶ 30. Moreover, the statements also show that Steichen was performing legal work for Hensler involving his divorce and the defense against his ex-wife's action to dissolve the trust.[4] These billing statements not only support Steichen's claim that he was engaged for matters beyond a suit against the trust company, but they also suggest that, if Hensler did not want Steichen working on matters other than suing the trust company, he could have objected to Steichen when first billed for this other work. Hensler made no objection, however, until two months after Steichen's letter of June 12, 2001, that informed Hensler of the potential conflict and the termination of Steichen's representation.[5] The relevant point, however, is that, regardless of

---

[4] For example, there are billing entries in March 2001, for "telephone conference Mr. Hensler re: multiple issues arising out of divorce"; preparation for a March 14 hearing on the ex-wife's trust claim and the scheduling of depositions regarding that claim; a telephone conference regarding, in part, "property division issues"; and an office conference between Steichen and two associates "re: circumstances of divorce trial and options for reconsideration." April, May and June billing entries, in addition to indicating continued discussions among Steichen, Hensler and other attorneys involved in the case of "claims against" the trust company and "proposals to . . . jointly pursue" that company, also show that Steichen acted to have the divorce trust claim proceedings stayed, reviewed an order accomplishing that end and drafted an agreement between Hensler and his ex-wife for "cooperation to pursue" the trust company.

[5] Steichen's letter of June 12, 2001, informs Hensler of the stipulated stay and potential dismissal of proceedings in the divorce trust claim litigation, of the anticipated next steps in investigating a joint claim against the trust company, and of the fact that Steichen had drafted a proposed cooperation agree-

774

whether Hensler could have, with due diligence, obtained the letter of March 30, 2001, from his ex-wife's attorney, the letter contained no information that was not readily available to Hensler from the itemized bills he received from Steichen. The bills show that, from mid-March onward, Steichen participated in discussions regarding Hensler's joining his ex-wife in a claim against the trust company. The March 30 letter simply contains additional evidence of that fact.

¶ 31. In summary, in order for Hensler's claim that Steichen procured the fee arbitration award by fraud to survive summary judgment, Hensler needed to submit evidentiary materials tending to show (or place in dispute) that (1) a clearly demonstrable fraud was perpetrated; (2) the substance and nature of the fraud could not, with due diligence, have been discovered prior to or during arbitration; and (3) the fraud was material to an issue decided by the arbitrator. Hensler failed on summary judgment to establish or place in dispute the first two of these three requirements.[6] The record on summary judgment contained no evidence

ment for Hensler and his ex-wife to consider. Steichen clearly communicates his view in this letter that, at the time Hensler retained him, Hensler was "on the same side as [the trust company] and the goal was to defend you and the trust against" Hensler's ex-wife's claims. Hensler returned an annotated copy of the June 12 letter to Steichen in August, indicating his disagreement with several statements in it. The exchange serves as another indication that Hensler was well aware prior to arbitration of Steichen's position regarding the scope of his representation and his reason for terminating that representation when he did.

[6] Given our conclusion that Hensler failed to make a sufficient showing on two of the required elements of procurement by fraud, we do not address the third, whether the alleged fraud materially related to an issue decided in the arbitration.

that, if believed by a factfinder, would clearly establish Steichen perpetrated any type of fraud during the arbitration proceedings. In any event, the substance of the alleged fraud was plainly communicated by Steichen to Hensler prior to the arbitration, such that Hensler had ample opportunity to discover the "fraud" and expose it before the arbitrator. We thus conclude Steichen is entitled to summary judgment confirming the arbitrator's award.

¶ 32.  Because we conclude that Steichen was entitled to summary judgment, we have no need to review the trial record. Our analysis and the disposition of this appeal rests solely on the parties' submissions on summary judgment. However, we do not wish to leave the impression that the flaw in Hensler's challenge to the arbitration award stems solely from technical flaws or oversights in his response to Steichen's summary judgment motion. Our review of the trial record reveals that the testimony and exhibits presented at trial by both parties did not vary materially from their submissions on summary judgment. For the same reasons that Hensler's claim of procurement by fraud fails to survive Steichen's motion for summary judgment, Hensler failed to meet his evidentiary burden at trial. Were we deciding the appeal on the trial record instead of the record on summary judgment, our conclusions and disposition would be the same.

¶ 33.  Our review of the trial record also shows why courts "should be hesitant" to set aside an arbitration award for alleged fraud. *See Teamsters Local 519*, 335 F.3d at 503. Although Hensler, as he was required to do, largely framed his arguments at trial in terms of Steichen's alleged fraud, the trial was, for all intents and purposes, a re-litigation of the issue addressed in arbitration—the disputed scope of Steichen's represen-

776

tation. Steichen agreed during cross-examination with Hensler's attorney's assertion that his testimony at trial was "essentially what you had testified to at arbitration." Hensler likewise acknowledged that, at arbitration, his "position was the same as [I am] saying now." In opposing Steichen's motion for a directed verdict, Hensler's counsel argued that "it's a question of fact over who the jury wants to essentially believe and who is going to be more credible." Similarly, in her closing argument, Hensler's counsel asked jurors to believe her client's testimony instead of Steichen's.

¶ 34. In short, the trial record reveals that Hensler's claim of procurement by fraud is, at bottom, little more than a complaint that the arbitrator believed the wrong party. Hensler sought in this action to have a judge or jury make different credibility determinations than the arbitrator did. As we have noted, however, the standards governing judicial review of arbitration awards do not permit de novo judicial determinations of arbitrated disputes to supplant arbitration outcomes. We acknowledge that the trial of a claim that an arbitration award was procured by fraud will often necessarily involve some duplication of the evidence presented to the arbitrator. However, a challenger must also present clear and convincing evidence of the alleged fraud, as well as evidence showing that the alleged fraud could not, with due diligence, have been discovered prior to or during arbitration. Hensler presented no such evidence, and the trial in this case consisted of little more than a replay of the arbitrated dispute.

¶ 35. We close by addressing Steichen's argument that Hensler or his present counsel, or both, "ought to pay all expenses of this proceeding" because Hensler's objection to confirmation of the fee arbitration award

had no basis in law or fact and was therefore frivolous under WIS. STAT. § 814.025.[7] Steichen posits that the integrity and future utilization of the State Bar of Wisconsin's fee arbitration program, and other arbitration mechanisms, will be undermined unless we direct the imposition of sanctions against Hensler or his present counsel. He contends that if "every participant can obtain de novo review of the merits in circuit court simply by asserting that the winning party lied and the losing party told the truth at arbitration, then there will be no point in agreeing to arbitration. Rather than reducing the cost and delay of dispute resolution, it would increase them."

¶ 36. As we have discussed, we agree with Steichen's characterization that the instant litigation was, at bottom, a re-litigation of the arbitrated dispute. We have also had little difficulty in concluding that the award should have been confirmed on summary judgment. We can discern no basis or authority, however, for us to direct the imposition of frivolousness sanctions on Hensler or his present counsel under WIS. STAT. § 814.025, even if we were inclined to do so. The statute requires that a request for frivolousness sanctions be directed to the circuit court prior to the entry of judgment. *See Northwest Wholesale Lumber, Inc. v. Anderson*, 191 Wis. 2d 278, 286, 528 N.W.2d 502 (Ct. App. 1995). Steichen requested frivolousness sanctions in his post-trial motion to confirm the arbitration award. The circuit court, however, had no cause to address the

<hr>

[7] We note that WIS. STAT. § 814.025 has been repealed by supreme court order effective July 1, 2005. Provisions regarding frivolous actions are now to be found in WIS. STAT. § 802.05, as amended effective July 1, 2005. *See* Wisconsin Supreme Court Order No. 03–06, 2005 WI 38 (Mar. 31, 2005).

request after it determined that Hensler prevailed in establishing procurement by fraud.

¶ 37.   WISCONSIN STAT. § 814.025, however, vests discretion in the circuit court, not this court, to impose frivolousness sanctions, the exercise of which we may review but not usurp. *See Lindevig v. Dairy Equip. Co.,* 150 Wis. 2d 731, 743, 442 N.W.2d 504 (Ct. App. 1989). Neither may we impose sanctions under WIS. STAT. § 814.025 for positions taken on appeal. *See Swartwout v. Bilsie,* 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981). Finally, our authority under the appellate rules to sanction frivolousness before this court extends to only "an appeal or cross-appeal . . . found to be frivolous," and not to an allegedly frivolous responsive position in support of a circuit court judgment or order. *See* WIS. STAT. RULE 809.25(3).

¶ 38.   Accordingly, we deny Steichen's request that we remand for a determination of sanctions to be imposed on Hensler or his present counsel. Steichen acknowledges that the appropriate standards for adjudicating a party's claim under WIS. STAT. § 788.10(1)(a) that an arbitration award was procured by fraud is a question of first impression in Wisconsin. Now that the question has been addressed, the adverse consequences cited by Steichen in support of his request for sanctions need not come to pass.

## CONCLUSION

¶ 39.   For the reasons discussed above, we reverse the appealed judgment and remand to the circuit court for entry of a judgment confirming the fee arbitration award of $1,727.75.

*By the Court.*—Judgment reversed and cause remanded with directions.