INTERNATIONAL ASSOCIATION OF
MACHINISTS, LODGE 917

v.

AIR PRODUCTS AND CHEM-
ICALS, INC.

Civ. A. No. 72–281.

United States District Court,
E. D. Pennsylvania.

April 24, 1972.

Leonard M. Sagot, Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot, Philadelphia, Pa., for plaintiff.

Robert W. Lees, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

This controversy concerns a labor dispute between the above-named parties which ultimately was referred to arbitra-

tion resulting in an award containing language which one party asserts is clear and unambiguous, and the other party asserts is unclear and ambiguous.

### FINDINGS OF FACT

1. The plaintiff is the International Association of Machinists and Aerospace Workers, Lodge 917 (hereinafter referred to as the "Union").

2. The defendant is Air Products and Chemicals, Inc. of Trexlertown, Pennsylvania (hereinafter referred to as the "Company").

3. At all times during this controversy the parties were subject to a collective bargaining agreement (hereinafter referred to as the "Agreement").

4. Prior to June 18, 1971, the Company announced that it would be making certain lay offs which involved employees John Pruzinsky, Charles Billman, John Siluk and Altman Anderson.

5. The above named employees claimed that they were entitled under the Agreement to exercise top seniority for layoff purposes because of their status as union officials, and "bump" into the shipping and receiving classification and continue to work while more senior employees were laid off.

6. Despite the employees' (to be laid off) protests as to their right to bump more senior employees in the shipping and receiving classification, the above named employees were laid off.

7. Subsequently, John Pruzinsky instigated grievance proceedings as set out in the Agreement to gain his reinstatement.

8. The Company and Union were unable to resolve the grievance, and arbitrator, Monroe Berkowitz, was selected to hear the controversy in accordance with the arbitration provisions of the Agreement.

9. On October 1, 1971, a hearing was held before arbitrator Berkowitz with appearances made by Larry S. Benner, Esq., Business Representative District 152, for Local Lodge 917, and Raymond N. Stevenson, Esq., Assistant Manager Labor Relations for Air Products and Chemicals, Inc.

10. During the hearing, as shown by the transcript, testimony was heard as to John Pruzinsky's receipt of unemployment compensation. All the laid-off employees involved except Altman Anderson received unemployment compensation during their lay off.

11. Arbitrator Berkowitz made his findings of fact and law on December 21, 1971, and made the following award:

"The Company violated the Labor Agreement by denying John Pruzinsky's request to bump an employee of the shipping and receiving clerk classification. He is entitled to full retroactive payment of wages he would have earned had he been afforded the opportunity to bump, less any wages that he earned in employment since that date."

12. This award was made on the basis of the grievance filed by John Pruzinsky, but was determinative as to all the employees since their grievance arose out of the exact alleged violation of the Agreement as the plaintiff here alleges.

13. The Company immediately reinstated the four employees in compliance with the award.

14. Following the reinstatement the Company issued retroactive paychecks to John Pruzinsky, Charles Billman and John Siluk. These retroactive paychecks did not include any potential overtime pay. Also, the amount of unemployment compensation received by the employees during the time they were laid off was set-off against the total amount of wages due. No check was issued to Altman Anderson because there was no retroactive pay due him since he had earned more money in other employment during the lay-off period.

15. Immediately upon receiving the checks the employees complained to the Company that unemployment compensation received was deducted from their retroactive pay, and potential overtime pay lost during the improper lay off was not included in the retroactive paycheck.

16. The Company took the position that the award was ambiguous and did not state that potential lost overtime was included in the award, and therefore must be added to lost wages, nor that unemployment compensation received could not be deducted from the retroactive pay as a set-off.

17. The Union took the position that the award was perfectly clear and unambiguous, i. e. potential lost overtime wages must be included in the retroactive pay, and unemployment compensation collected could not be deducted from the retroactive payment of wages.

18. On February 8, 1972, the plaintiff, Union, filed a complaint in Federal District Court seeking a preliminary injunction which sought to (1) require the defendant Company to implement the arbitrator's award as to full retroactive payment of wages without a set-off for unemployment compensation; (2) reasonable counsel fees; (3) interest on the sum in question from December 21, 1971; (4) any such further relief the Court deems just.

19. The Company has moved the Court to dismiss the complaint for (1) failure to state a claim; (2) lack of jurisdiction; and, (3) failure to exhaust contractual remedies.

20. On February 23, 1972, a hearing on the above matter was held.

## DISCUSSION

The plaintiff herein brings this action for a preliminary injunction to enforce an arbitration award which found the Company to have violated the Agreement, and the terms by which the violation was to be corrected. This Court is faced with the issue of how far the Court may go in reviewing an award by an arbitrator.

The Company has moved the Court to dismiss the Complaint for (1) failure to state a claim in that the Company has fully complied with the award; (2) lack of jurisdiction; and, (3) failure to exhaust contractual remedies (submit the award to further arbitration for clarification).

The controversy followed the proper labor-management dispute procedure as set forth in Grievance, Article XVI of the Agreement. When the grievance was not settled the proper arbitration process as set forth in Arbitration, Article XVII of the Agreement was also followed.

There is no controversy as to the propriety of the arbitration hearing, proper representation at the hearing, or the qualifications of the arbitrator. There is also no question as to the proper reinstatement of the employees involved. The controversy lies in the language of the award which is intended to correct the Company's violation of the Agreement.

The operative language in question of the award is as follows,

"He is entitled to full retroactive payment of wages he would have earned had he been afforded the opportunity to bump, less any wages that he earned in employment since that date."

The Company in implementing the award under its own interpretation of full retroactive payment of wages issued retroactive paychecks which did not include any potential overtime lost, and used unemployment compensation as a set-off in reducing the amount of retroactive pay. The plaintiff alleges that the unemployment compensation received should not be set-off against the retroactive payment of wages lost, and that potential lost overtime pay included in the retroactive payment of wages as a proper implementation of the award.

The collective bargaining agreement in question provides under Article XVII, Arbitration in part:

Section 17.2. The arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement or any other agreements made supplementary hereto.

Section 17.3. The decision of the arbitrator upon the issues so submit-

ted to arbitration shall be binding upon the parties to this agreement. . .

■ The parties when submitting a grievance to arbitration contractually bind themselves, by the express words of the agreement, to the final decision of the arbitrator. Arbitration is designed to settle controversies and disputes between parties by a method other than through the regularly established tribunals of justice. Mercury Oil Refining Co. v. Oil Workers Int. Union CIO, 187 F.2d 980 at 982 (10th Cir. 1951). An over-riding policy of our labor laws is to encourage labor management disputes to be decided within their own ranks, before ultimate resort to the courts. Therefore, the courts are reluctant to act as interpreters of arbitration awards, since arbitration is bargained for when entering into a collective bargaining agreement, and would first look to remanding a controversy to arbitration before vacating or modifying such awards. It is not for the court to say what the arbitrator should do in making his award, provided the award is within the scope of the agreement. See United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).[1]

Most controversies involving the award of an arbitrator go to the litigants' assertion that the arbitrator in the interpretation and application of the Agreement, and the rendering of an award went beyond the scope of the authority given to him by the collective bargaining agreement: See Steelworkers trilogy, Supra., and Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir., 1969) and others. That is not the controversy as presented to this Court. The parties have not asserted that the arbitrator has gone beyond his scope of authority, but rather agree that he acted within his scope of authority in making the award. The Company, rather than claiming that the arbitrator has gone beyond his scope of authority, claims the award to be ambiguous. This Court fails to draw the same conclusion in the light of the express wording of the award.

■ The award must be read in the context of the findings and conclusions of the arbitrator. As stated in Mercury Oil Refining Co. v. Oil Workers Int. Union CIO, supra. 187 F.2d at 982:

"The award need not be in technical or exact language but certainty is an essential and indispensable element to its validity. It must be sufficiently definite that only ministerial acts of the parties are needed to carry it into effect."

This Court finds the award as presented to be within the above limits, and sufficiently clear and concise to afford no problems in implementation. This Court is not faced with the problem posed in Hanford Atomic Metal Trades Council v. General Electric Co., 353 F.2d 302 (9th Cir., 1966), where the award was so ambiguous that it necessitated remanding to the arbitration committee for clarification and interpretation. The Court stated:

". . . that all of the foregoing cases [Steelworkers trilogy] accept the philosophy that where the parties have elected to submit their disputes to arbitration, they should be completely resolved by arbitration, rather than only partially resolved. In some cases the carrying out of this philosophy will require remanding the matter to the arbitrators, and we think that this is such a case."

There the court recognized the ambiguity and remanded the award for clarification. This Court recognizes the clarity of the award as presented and orders its implementation.

This Court recognizes its power to submit an award for further arbitration

---

1. The more commonly known Steelworkers trilogy cases.

and clarification when necessary, but declines from doing so in this instance. The award says what it says with sufficient certainty as to need no further clarification. Of course, the interpretation of the award must include the impute of historically unique meaning of words and phrases which are put in the framework of some discipline, which is labor law and/or labor relations as we have here. The terms of the award may have different interpretations for the purpose of determining federal income tax ramifications and application of the Internal Revenue Code, but that is not what we are faced with here. We are faced with a labor interpretation of a labor arbitration award, which as this Court views the situation bears no ambiguity.

■ The award states with no uncertain terms that any wages earned could be used as a set-off against retroactive payment of wages. Receipt of unemployment compensation cannot be said to fall within the classification of "wages earned" as stated in the award. If unemployment compensation were to be deducted from the full retroactive wages the award would have said so in no uncertain terms, as other arbitration awards for back pay have done in the past. The award also clearly states the employee is entitled to full retroactive payment of wages he would have earned had he been afforded the opportunity to bump. The award does not limit the retroactive pay to the usual working hours, but includes all wages he would have earned had he been afforded the opportunity to bump. If the employee can show he would have earned overtime pay as alleged at the preliminary injunction hearing, then the award states he can recover this potential lost overtime pay as "wages he would have earned" had he

been afforded the opportunity to bump. That is as it should be.

■ As to the issue of interest to be paid we must consider what the final payment of illegally held money must include. We have no difficulty in deciding that the final payment should include the legal rate of interest on the amount of the money which was illegally withheld.

■ The plaintiff has also moved the court for the assessment of reasonable counsel fees. This Court recognizes its equity power in being able to award counsel fees,[2] but refrains from doing so. The Court has heard no testimony to indicate that the Company was without justification in failing to implement the arbitrator's award. Rather we are convinced that this litigation was the result of both parties being in disagreement over the proper implementation of the award; each litigant being able only to see his interpretation of the award which led to the loggerhead resulting in the controversy before us now. Though the court is able to see the award as clear and capable of implementation, we can also see how, in the charged environment of labor disputes, the parties may justifiably differ on interpretations of the award. Therefore, we do not award attorney's fees to the plaintiff.

## CONCLUSIONS OF LAW

1. Jurisdiction of this Court lies by virtue of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, in that plaintiff is a labor organization engaged in contractual relations with the defendant, an employer in industry affecting commerce as defined by Section 301.

2. The arbitration award is clear and concise without need for further clarifi-

---

2. The Court in Local No. 149 International Union Automobile, Aircraft and Agriculture Implement Workers of America (UAW–AFL–CIO) v. American Brake Shoe Co., 298 F.2d 212 (4th Cir., 1962) while denying the awarding of attorney's fees in that particular case recognized the power of the court to award attorney's fees if the employee was without justification in refusing to abide by arbitrator's award.

cation by arbitration, and only needing complete implementation.

3. Attorney's fees will not be awarded because there has been no showing that the Company was without justification in refusing to totally implement the arbitrator's award.