NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0771n.06
Filed: September 1, 2005

No. 04-3033

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| D.E.I., Inc., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Ohio and Vicinity Regional Council of | ) | THE NORTHERN DISTRICT OF |
| Carpenters and Ohio and Vicinity | ) | OHIO |
| Regional Council of Carpenters, Local | ) | |
| 372, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before: Rogers and Sutton, Circuit Judges; and Rosen, District Judge.[*]

**Rogers, Circuit Judge.** Plaintiff D.E.I., Inc., an architectural design/build firm, appeals the district court's decision granting summary judgment in favor of defendants Ohio and Vicinity Regional Council of Carpenters and Ohio and Vicinity Regional Council of Carpenters, Local 372 ("the Union") on D.E.I.'s action to vacate an arbitration award. In the project at issue, D.E.I. had been hired by Citizens National Bank as a general contractor on the construction of a new bank in Van Wert, Ohio. D.E.I.'s collective bargaining agreement with the Union prohibited D.E.I. from subcontracting with non-union contractors; however, the bank specifically wanted D.E.I. to use local

---

[*]The Honorable Gerald E. Rosen, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

non-union carpenters who were current or potential customers of the bank. Citizens National therefore terminated the general contractor agreement, and one week later retained D.E.I. as a construction manager. Under the terms of the construction manager contract, Citizens National, and not D.E.I., would contract with the carpenters. When the Union determined that in fact non-union carpenters were working on the project, it filed a grievance alleging that D.E.I. had subcontracted with non-union carpenters. An arbitration panel held that D.E.I. had violated the subcontracting provision of its collective bargaining agreement, after which D.E.I. filed its motion to vacate the arbitration award in the district court. The district court granted summary judgment in favor of the Union, and we affirm the judgment of the district court. The arbitration award can be viewed as resting on the theory that D.E.I. in fact acted as a general contractor on the project, and therefore was responsible for the subcontracting of the non-union carpenters. The arbitration panel was therefore "arguably" construing the collective bargaining agreement, and its award cannot be set aside. Similarly, the panel's apparent holding that the grievance was timely can be explained by the continuing violation theory. Finally, there is no need to remand the award for clarification, as D.E.I. admits that the award itself is clear.

**I.**

On August 15, 2002, Citizens National and D.E.I. signed the so-called "General-Contractor Contract" for the building of a new Citizens National bank in Van Wert, Ohio ("Van Wert project"). Under this contract, D.E.I. was required to build the bank. Before construction began on the Van Wert project, however, a dispute arose between the Union and D.E.I. over other projects. In

September, 2002, the Union sued D.E.I. in Ohio state court, alleging that D.E.I., Inc.'s, predecessor, D.E.I. Services, had signed a collective bargaining agreement that bound D.E.I., Inc., and that D.E.I. was violating that agreement in one or more projects unrelated to the Van Wert project. During settlement discussions, D.E.I. allegedly "expressed a willingness to be bound to the [collective bargaining agreement], but only if the [Union] agreed to 'carve out' from the coverage of the [agreement] an upcoming project on which DEI was slated to serve as a general contractor on the construction of a Citizens National Bank in Van Wert, Ohio." Ultimately, the parties settled the lawsuit; D.E.I. agreed to be bound by the collective bargaining agreement without obtaining an exception for the Van Wert project.

D.E.I. had sought to exclude the Van Wert project from the collective bargaining agreement because Citizens National wanted to use its current and potential customers as contractors on the project. Even after the exclusion fell through, however, Citizens National still wanted the non-union bank customers to perform the work on the bank. On November 18, 2002, Citizens National "rescinded" the agreement under which D.E.I. was to act as the general contractor on the project. The letter stated that despite the rescission, "it seems that there might be another role that DEI could play in this project."

One week later, on November 26, 2002, Citizens National and D.E.I. entered into a "Construction Management Contract," under which D.E.I. would essentially act as a consultant and overseer to the construction of the bank. The amount of compensation D.E.I. would receive under the construction management contract was $1,804,133.00, the identical amount that D.E.I. was to

receive under the rescinded general contractor contract.

On February 19 or 20, 2003, the Union filed a grievance against D.E.I. alleging a violation

of the "Sub-Contracting clause." The grievance was referred to the Joint Labor Relations Board,

and a Grievance Hearing before a panel of the Board ("arbitration panel" or "panel") was held on

April 10, 2003. Both sides presented evidence to the panel. The district court described the

evidence presented and arguments made by the parties:

> The Union contended that the construction agreement was a sham, D.E.I. was
> de facto serving as a general contractor, and subcontracting work had to be
> performed by union labor. In support of its contention that D.E.I. was acting as a
> general contractor, the Union pointed out that construction managers, who are
> obligated to perform less work and assume lesser responsibilities, are also paid less,
> in contrast to D.E.I., which was receiving the same compensation despite its putative
> change in status from general contractor to construction manager.
>
> In addition, the Union also presented evidence that the same contractors who
> had worked for D.E.I. on other projects for which it was general contractor were
> working on the Van Wert project. One of those subcontractors admitted to a union
> representative that its bid had gone to D.E.I., rather than the bank. In addition, the
> Union submitted evidence that two other subcontractors had been subcontracted
> directly by D.E.I.. The Union also offered an admission by D.E.I.'s project manager
> to another contractor that D.E.I. had "found a way to 'get around all of that Union
> stuff' . . . by call[ing] themselves Construction Managers on the Van Wert Project."
>
> D.E.I. also argued that the Union's grievance was not timely. The collective
> bargaining agreement provides that "No grievance shall be filed or processed on
> events which have occurred prior to seven (7) calendar days before the grievance is
> filed." The Union's grievance bears two dates, February 19 and February 20, 2003.
>
> D.E.I. presented evidence that the union was aware that non-union labor was
> doing carpentry work as of February 3, 2003, and that a union agent observed such
> work on February 5, 2003. The union, in response, stated that the February 3rd
> observation had not been by a union representative, and that on February 5th,
> immediately after its agent observed non-union workers at the project, it immediately
> complained to D.E.I.. Thereafter, rather than filing a grievance, the Union sought to
> resolve its objections informally. These efforts reached an impasse on February

11th.

The Union also presented evidence to the arbitrators that, notwithstanding the provision in the collective bargaining agreement requiring grievances to be filed within seven days, its grievance was timely because it had been filed within seven business days, as allowed by past practice between the parties.

*D.E.I., Inc. v. Ohio and Vicinity Regional*, No. 3:03CV7434, slip op. at 3-4 (N.D. Ohio Dec. 8, 2003). On April 22, 2003, the panel gave its finding, which was described by the Secretary of the Board:

According to the evidence and testimony given the panel agreed that D.E.I., Inc. is a signatory to the Carpenter Collective Bargaining Agreement.

They also found D.E.I., Inc. in violation of the Carpenters Collective Bargaining Agreement Article XI. The panel awarded the following:

1.    D.E.I. Inc. and the carpenters can enter into a settlement that both agree to. Both parties have seven (7) days . . . to enter into the settlement.

2.    If settlement is not agreed to three (3) carpenter contractors will look at the document plans and specifications to determine what the carpenters' man hours on the Van Wert project are. D.E.I., Inc., the Union, and the panel will each select one (1) contractor to do the procedure. The panel agreed to accept the middle bid of the three (3).

3.    D.E.I., Inc. will have seven (7) days to select its choice. If not selected the panel will select two (2).

4.    After the amount of damages is determined D.E.I., Inc. will have thirty (30) days to comply with the award.

5.    The panel also awarded all reasonable costs involved in the procedure and process including Attorney fees and any cost of collections.

6.    The settlement or any final monetary award is to be paid to the Northwest Ohio Carpenters' Joint Apprenticeship & Training Fund.

The collective bargaining agreement provision D.E.I. was held to have violated, Article XI, is the "subcontracting" provision.

> The Contractor [D.E.I.] agrees he will not subcontract job site work to any Employer who does not have a collective bargaining relationship, at the time the work is to be performed, with a union affiliated with the Council covering such work, whose members receive the negotiated wage rates.

D.E.I. filed an action to vacate the award in the district court, arguing that the arbitration award did not "draw its essence from the collective bargaining agreement." D.E.I. also argued that the grievance had been untimely, and that the award should be remanded to the arbitration panel for clarification on the amount of the award. The district court granted summary judgment in favor of the Union on all issues and ordered D.E.I. to comply with the arbitration award. The district court explained that the arbitration panel must have made a factual finding that "with regard to carpentry work performed on the Van Wert project, D.E.I. acted as a general contractor, rather than as a construction manager," and that the grievance was timely filed. The court explained further:

> Although . . . the panel's factual findings that D.E.I. functioned as a general contractor, at least with regard to subcontracting, and the coverage of the grievance may not be clearly visible, they are the necessary foundation for the results reached by the arbitrators. The findings are "rationally inferable from the facts before the arbitrator[s]."

*D.E.I., Inc.*, slip op. at 6. The district court therefore dismissed D.E.I.'s action to vacate and ordered enforcement of the arbitration award. This appeal followed.

## II.

As the district court concluded, the arbitration panel's decision can be seen as resting on a factual conclusion that D.E.I. acted as a general contractor on the Van Wert project. Because the theory that a construction manager can act as a de facto general contractor is legally plausible, the

arbitration award must be confirmed. Similarly, the arbitration panel's apparent holding that the

grievance was timely filed can be explained by the continuing violation theory. Finally, D.E.I.'s

argument that the arbitration award must be remanded for clarification cannot withstand D.E.I.'s

own admission that the award itself is clear, however unclear the reasons behind the award may be.

"When a district court decides to confirm or vacate an arbitration award, we review its legal

conclusions de novo and its factual findings for clear error." *Int'l Brotherhood of Teamsters, Local*

*519 v. United Parcel Service, Inc.*, 335 F.3d 497, 503 (6th Cir. 2003).

> We apply a narrow standard of review for labor arbitration awards: "As long
> as the arbitrator's award draws its essence from the collective bargaining agreement,
> and is not merely his own brand of industrial justice, the award is legitimate." We
> defer to the arbitrator's finding of facts and his interpretation of a collective
> bargaining agreement. This reflects an explicit policy preference for the private
> settlement of labor disputes under federal law.

> The construction and interpretation of collective bargaining agreements is a
> job for labor arbitrators and not the federal judiciary. However, arbitrators are bound
> by certain limitations as well:

> > The arbitrator may not ignore the plain language of the contract; but
> > the parties having authorized the arbitrator to give meaning to the
> > language of the agreement, a court should not reject an award on the
> > ground that the arbitrator misread the contract. . . . [A]s long as the
> > arbitrator is even arguably construing or applying the contract and
> > acting within the scope of his authority, that a court is convinced he
> > committed serious error does not suffice to overturn his decision.

*United Parcel Service, Inc.*, 335 F.3d at 505-06 (internal citations omitted) (quoting *United*

*Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987)).

**A.      The Arbitration Panel's Finding that D.E.I. Violated the Subcontracting
         Provision Must Be Upheld**

The district court properly held that the arbitration panel made a "factual finding[] that D.E.I. functioned as a general contractor, at least with regard to subcontracting." *D.E.I., Inc.*, slip op. at 6. D.E.I. argues that it is impossible for D.E.I. to have been the general contractor, because it was the construction manager, and argues that the district court "drew an unreasonable inference from specious, unreliable, and inadmissible Civil Rule 56 evidentiary materials." Appellant's Br. at 19. D.E.I.'s arguments, however, fail to take into account the deference owed to an arbitrator's decision.

> Where, as here, the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

In addressing D.E.I.'s argument that, as a construction manager, it cannot be held to have violated the subcontracting provision, it is important to note what is not at issue. The Union concedes that a true construction manager would not be bound by this provision, *see* Appellee's Br. at 17, and is therefore arguing only that D.E.I. acted as a general contractor. Both sides therefore agree that if D.E.I. was in truth the construction manager, it could not be held to have violated the collective bargaining agreement.

The district court's interpretation of the panel's award—that the panel made a factual finding that D.E.I. acted as a general contractor—must rest on the legal theory that a construction manager can be held to be a de facto general contractor. This theory appears to be legally plausible, and

D.E.I. has not demonstrated that the theory is implausible. Certainly, once D.E.I. is considered to be the de facto general contractor, then there can be no argument that the panel was not "arguably construing or applying the contract and acting within the scope of [its] authority." *United Parcel Service, Inc.*, 335 F.3d at 506 (quoting *Misco*, 484 U.S. at 38). It was clearly a violation of the collective bargaining agreement for D.E.I. to "subcontract job site work to any Employer who does not have a collective bargaining relationship."

Stated differently, D.E.I. has not demonstrated that the arbitration award "fails to draw its essence from [the] collective bargaining agreement." *United Parcel Service, Inc.*, 335 F.3d at 506. There are four ways in which an award can fail to draw its essence from the collective bargaining agreement:

> (1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Dobbs, Inc. v. Local No. 614, Int'l Brotherhood of Teamsters of Am.*, 813 F.2d 85, 86 (6th Cir. 1987) (internal quotation omitted); *see also United Parcel Service, Inc.*, 335 F.3d at 507; *United Auto. Workers of Am. v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002). None of these four circumstances is present because the award was based on the legally plausible theory that D.E.I. was acting as a general contractor.

D.E.I. also argues that the district court "drew an unreasonable inference from specious,

unreliable, and inadmissible . . . evidentiary materials." Appellant's Br. at 19. Under the applicable standard of review, the district court did not err. An arbitration award may not be vacated merely for "improvident, even silly, factfinding." *Misco*, 484 U.S. at 39. "The arbitrator's factual findings may be vacated only if there is no rational support for his award or if the findings are based on some form of dishonesty." *DMB Technologies, Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 659 (6th Cir. 2001); *see also AK Steel Corp. v. United Steelworkers of Am.*, 163 F.3d 403, 407 (6th Cir. 1998) ("A court must only be satisfied that the record sufficiently supports the arbitrator's factual findings.").

The Union clearly presented enough evidence to the panel to provide some rational support for the award. As the district court explained,

> the Union pointed out that construction managers, who are obligated to perform less work and assume lesser responsibilities, are also paid less, in contrast to D.E.I., which was receiving the same compensation despite its putative change in status from general contractor to construction manager.
>
> In addition, the Union also presented evidence that the same contractors who had worked for D.E.I. on other projects for which it was general contractor were working on the Van Wert project. One of those subcontractors admitted to a union representative that its bid had gone to D.E.I., rather than the bank. In addition, the Union submitted evidence that two other subcontractors had been subcontracted directly by D.E.I.. The Union also offered an admission by D.E.I.'s project manager to another contractor that D.E.I. had "found a way to 'get around all of that Union stuff' . . . by call[ing] themselves Construction Managers on the Van Wert Project."

*D.E.I., Inc.*, slip op. at 3. Some of this evidence supports the arbitrator's decision with some force, such as the admission of D.E.I.'s project manager and the amount of compensation D.E.I. received. The award is not without support.

Furthermore, D.E.I.'s argument that much of this evidence is inadmissible does not require a different result. "Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *Nat'l Post Office Mailhandlers v. United States Postal Service*, 751 F.2d 834, 841 (6th Cir. 1985). Therefore it does not undermine the arbitral decision that some of the evidence presented to the arbitration panel was hearsay or speculative.

The arbitration award was supported by the evidence presented to the arbitration panel, and there is a legally plausible theory explaining the award. The award cannot, therefore, be vacated. The arbitration panel was arguably applying the contract when it concluded that D.E.I. violated the subcontracting provision of the collective bargaining agreement.

**B.      The Panel's Conclusion that the Grievance Was Timely Filed Must Be Upheld**

The panel's apparent conclusion that the Union's grievance was timely filed is subject to the same analysis set forth above: if the arbitration panel was arguably construing the collective bargaining agreement, then its award must be upheld. *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 928-29 (6th Cir. 2000). With respect to the timing of grievances, the collective bargaining agreement provided that "[n]o grievance shall be filed or processed on facts or events which have occurred prior to seven (7) calendar days before the grievance is filed." The district court described the evidence as follows:

D.E.I. presented evidence that the union was aware that non-union labor was

> doing carpentry work as of February 3, 2003, and that a union agent observed such work on February 5, 2003. The union, in response, stated that the February 3rd observation had not been by a union representative, and that on February 5th, immediately after its agent observed non-union workers at the project, it immediately complained to D.E.I.. Thereafter, rather than filing a grievance, the Union sought to resolve its objections informally. These efforts reached an impasse on February 11th.
>
> The Union also presented evidence to the arbitrators that, notwithstanding the provision in the collective bargaining agreement requiring grievances to be filed within seven days, its grievance was timely because it had been filed within seven business days, as allowed by past practice between the parties.

*D.E.I., Inc.*, slip op. at 4. The grievance was ultimately filed on February 19 or 20, 2003. The district court held that the arbitration award "though it fails to say so expressly, undoubtedly manifests the panel's finding[] . . . that, in light of the evidence, . . . the grievance covers the entire period and thus was timely filed." *Id.* at 5. Because this is a legally plausible explanation, the district court must be affirmed.

The facts of this case are similar to the facts of an earlier unpublished Sixth Circuit case. In *Agipcoal USA, Inc. v. Int'l Union,* No. 88-6122, 1989 WL 66484 (6th Cir. 1989), the Union became aware of a collective bargaining agreement violation in July and August of 1986. Specifically, Agipcoal had hired independent contractors to mine its coal. The collective bargaining agreement required grievances to be filed within 10 days. The Union, however, first attempted to convince the independent contractors to sign labor agreements, and then, failing that, picketed the Agipcoal complex. Finally, in December, 1986, a Union member filed a grievance. *Id.* at *1. The arbitrator found in favor of the Union, holding that the leases constituted a continuing violation. *Id*. The district court vacated the award, holding that the award conflicted with the express terms of the

collective bargaining agreement. This court, applying *Misco*, reversed.

> The arbitrator in the present case was, in our opinion, "arguably" construing and applying the contract. The arbitrator did not ignore the 10-day provision of the bargaining agreement, but attempted to apply it in conjunction with a "continuing violation" concept that is well established in both arbitral and judicial precedents.
>
> It may well be true that the arbitrator committed serious error in applying the continuing violation concept here. It may also be true that the arbitrator ought not to have deemed the . . . leases to be continuing violations. We, however, "do not sit to hear claims of factual or legal error by an arbitrator."

*Id.* at \*2 (quoting *Misco*, 484 U.S. at 38).

This reasoning applies directly to the instant case. The continuing violation theory, "well established in both arbitral and judicial precedents," *id.*, is a plausible explanation for why the panel did not find the grievance to be untimely. *See Monee Nursery & Landscaping Co. v. In'l Union of Operating Engineers, Local 150*, 348 F.3d 671, 676 n.2 (7th Cir. 2003) (one permissible definition of continuing violation theory is the "common understanding" of the words, that is, that a violation of the collective bargaining agreement was ongoing).

D.E.I., however, argues that the arbitration panel could not possibly have applied the continuing violation doctrine because an award of 100 percent of the money a Union carpenter would have received, which was the award given, is inconsistent with the continuing violation theory. *See* Appellant's Reply Br. at 3, 9-10. There is some tension between the damages awarded by the arbitration panel and the application of the continuing violation theory.[1] Nonetheless, the

---

[1] The arbitration relied upon by D.E.I. to illustrate this point did not involve a construction contract, but rather involved a claim for underpaid wages. In the unpaid or

award must be confirmed. As this court has stated, "[t]hough the arbitrators disregarded the [damages] provision, deciding not to apply such a provision cannot, in and of itself, mean that an award must be vacated." *Jacada (Europe), Ltd. v. Int'l Marketing Strategies, Inc.*, 401 F.3d 701, 712-13 (6th Cir. 2005). An argument similar to that advanced by D.E.I. was considered and rejected in *Dawahare v. Spencer*, 210 F.3d 666 (6th Cir. 2000). In *Dawahare*, the plaintiff argued that an award should be vacated because although the arbitrators had concluded that the defendants were liable to the plaintiff, and had in fact awarded the plaintiff punitive damages, the total award of damages constituted only a fraction of what the evidence indicated was the likely amount of loss. The plaintiff had argued that because it was clear the arbitrators considered the defendants to be liable, "the common law entitles him to recover all losses proximately caused by the wrongful acts of the liable parties." *Id.* at 669. This court refused to vacate the award:

> The monetary award simply designated the amount of damages without detailed explanation. It is difficult to say that the arbitrators refused to heed a clearly defined legal principle. [The plaintiff] points to nothing in the record that shows the arbitrators' awareness of the common law that he alleges to be applicable. This is not a case where one of the parties clearly stated the law and the arbitrators expressly chose not to follow it.

*Id.* at 670. This court admitted that the arbitrators were possibly mistaken in their award, noting that

---

underpaid wages context, although each paycheck that is deficient may form a separate violation, permitting a claim to be timely filed so long as the worker receives a paycheck, the remedy will be limited "to the earliest date possible within the time limits of the grievance procedure." *In re Aramark Servs. Inc.*, No. 99-17765, 115 Lab. Arb. (BNA) 401 (2000). This limitation may not transfer easily to the construction contract scenario present in this case. We need not reach the issue, however, because as illustrated *infra*, a mere mistake in calculating damages does not justify the vacation of an award.

punitive damages are usually awarded only in cases of egregious conduct, so that "a compensatory award of less than 5% of the damages alleged is likely too low." *Id.* at 671. Nonetheless, this court confirmed the award.

D.E.I.'s argument closely parallels the argument made and rejected in *Dawahare*. D.E.I. argues that if the arbitration panel had in fact relied upon the continuing violation theory, the arbitration panel would have come to a different formula for determining damages. So too the plaintiff in *Dawahare* had argued that if the arbitrators there had found the defendants liable—which they clearly had—they would have awarded more damages. But because neither purported mistake, if even present, would indicate that the arbitrator was not "arguably" construing the contract, neither is grounds to vacate. The district court's conclusion that the grievance was timely filed must therefore be affirmed.

## C. There Is No Need to Remand the Award for Clarification

D.E.I.'s third contention is that the arbitration award must be remanded to the panel for clarification of the damages-award scheme. Although such a remand is theoretically possible, D.E.I.'s argument fails before it has even begun. D.E.I., in its briefs, admits that the award is clear. The only "ambiguity" identified by D.E.I. is the lack of explanation for the award. For example, D.E.I. argues that:

> It is unclear what the Arbitration Panel thought about the questions surrounding the timeliness of the Union's grievance, and why the Panel's Decision is completely silent on these questions. If the Panel applied the "continuing

violation" doctrine, as the Union speculates, then the Decision's award scheme is illegal because it awards damages for the entire project[fn] instead of just the carpentry work remaining from the period beginning seven days before the grievance was filed.

[fn]Awarding 100 percent of the gross labor component of the carpentry contract price, <u>as the Panel did</u>, also ignores the fact that the hypothetical Union carpenter was relieved of all cost and effort that would have been expended if it had actually performed the work.

Appellant's Reply Br. at 26-27 (emphasis added).

The parties are clear on what damages the arbitration panel awarded. D.E.I. disagrees with the wisdom of the award, but, as addressed above, the panel's award can be seen as resting on legally plausible theories. Accordingly, there is no need to remand for clarification. *See Trivisonno v. Metro. Life Ins. Co.*, No. 01-3213, 39 Fed. App'x 236, 242 (6th Cir. June 24, 2002).

## III.

The award does not fail to draw its essence from the collective bargaining agreement. There are legally plausible theories for the award, and rational support in the facts for the award. The judgment of the district court, granting summary judgment in favor of the Union, is therefore affirmed.