[965 NYS2d 15]

In the Matter of PINE STREET ASSOCIATES, L.P., Appellant, v
SOUTHRIDGE PARTNERS, L.P., et al., Respondents.

First Department, April 25, 2013

---

**APPEARANCES OF COUNSEL**

*Becker & Poliakoff, LLP*, New York City (*Lance Gotthoffer* of counsel), and *Reed Smith LLP*, New York City (*Gil Feder* and *John L. Scott, Jr.* of counsel), for appellant.

*Robinson Brog Leinwand Greene Genovese & Gluck, P.C.*, New York City (*Lawrence S. Hirsh* of counsel), and *Moses & Singer LLP*, New York City (*Steven R. Popofsky* and *Jason Canales* of counsel), for respondents.

### OPINION OF THE COURT

Acosta, J.

The primary issue in this case is whether the tender of secu-

rities to petitioner by respondent Southridge Partners, L.P., an investment fund (the fund), satisfies respondent's obligation under an arbitral award to complete the redemption of petitioner's interest in the fund in cash or in kind. We hold that Southridge owes petitioner the same dollar amount regardless of whether it chooses to satisfy its obligation "in cash" or "in kind." We thus reverse Supreme Court's orders and remand for an evidentiary hearing to determine whether the obligation has been met.

In 2005, petitioner Pine Street Associates, L.P., invested approximately $8.3 million in the fund. In 2008, Pine Street requested a "full redemption" of its investment from Southridge, effective December 31, 2008. Under the terms of Southridge's Sixth Amended and Restated Limited Partnership Agreement (the agreement), withdrawal of a limited partner occurs upon the partner's request for redemption of all of its interest. Southridge acknowledged Pine Street's request and reported that the value of Pine Street's distributive class of interest at redemption was approximately $8,076,457.85. In March 2009, Southridge informed Pine Street of its decision to postpone redemption of Pine Street's class of interests pursuant to section 7.2 (f) of the agreement.[1]

In April 2009, Pine Street filed a demand for arbitration, alleging that Southridge engaged in bad faith in failing to honor its request to redeem. Following a two-day arbitration hearing, the arbitrator rendered an award, dated January 18, 2010, interpreting the agreement as permitting Southridge to exercise its discretion as to when to redeem "only . . . under certain defined circumstances and [if] exercised reasonably in good faith." The arbitrator then found that "[Southridge] failed to establish a credible evidentiary basis for the existence of those defined circumstances, or the reasonableness of their exercising discretion, that delayed the redemption of [Pine Street's] interest then or now." On the basis of that finding, the arbitrator rendered the following award in favor of Pine Street:

> "1. Notwithstanding any other provision of the Agreement, (a) within thirty (30) days from the date of this Award, [Southridge] shall redeem no less

---

**1.** Section 7.2 (f) provides, in pertinent part: "The General Partner [Southridge] shall have the right, exercisable from time to time in the General Partner's sole and absolute discretion, to suspend or postpone the payment and effective date of any redemption of Interests in any Class for the whole or any part of a period."

than forty percent (40%) of the balance of [Pine Street's] interest in [the fund] in cash; and (b) within ninety (90) days from the date of this Award, [Southridge] shall complete the redemption of [Pine Street's] interest in [the fund] in cash or in kind, plus interest at the legal rate on said balance then remaining from October 1, 2009, until paid in full.

"2. Within forty five (45) days from the date of this Award, [Southridge] shall provide [Pine Street] with an accounting of [Pine Street's] interest and position in [the fund] (represented to be $8,079,457.85 [sic] as of December 31, 2008) from January 1, 2008, to said date."

On February 17, 2010, in compliance with paragraph (1) of the arbitration award, Southridge paid Pine Street $3,195,064 in cash, representing approximately 40% of the stated value of Pine Street's remaining interest in the fund ($7,987,660.19).

On April 20, 2010, Southridge also transferred a variety of stock certificates (whose value is disputed) to Pine Street. In a cover letter, Southridge informed Pine Street that it had delivered the stock certificates, "almost entirely" completing the redemption of Pine Street's interest in the fund in kind. The letter also stated that "[a]n additional certificate, representing only a single-digit percentage of the remaining redemption value [would be forwarded] shortly. Upon such delivery, the award will have been satisfied in full." On May 27, 2010, Southridge assigned to Pine Street a portion of its rights, in the amount of $151,258.80 plus interest, in a promissory note due December 31, 2009, and in two stock certificates, each for 500,000 shares in Akers Biosciences, Inc.

On or about November 24, 2010, approximately 10 months after the arbitrator issued the arbitration award, Pine Street filed a petition to confirm the award and for entry of judgment. In response, Southridge argued that the motion was belated, and that because it had satisfied the award some time before, confirmation was unnecessary. Pine Street did not dispute Southridge's representation that the award had been paid in full. Supreme Court granted the petition to confirm the award, and on May 12, 2011 entered judgment.

By order to show cause dated May 18, 2011, Southridge moved to enjoin and restrain Pine Street from seeking to enforce the judgment entered, "unless and until the Court determined that the judgment has not in fact been satisfied and has delineated the terms and conditions of any such enforcement." Southridge

stated that it had just recently learned that Pine Street's position was that Southridge had not satisfied the award. In his affidavit in support of the motion, counsel stated that Pine Street had refused Southridge's proposal to litigate the issue of whether the award had been satisfied. In opposition, Pine Street argued that the in-kind portion paid in securities was worth far less than the $4.5 million (the remaining 60%) to which it was entitled under the award, its expert had valued the tendered securities at no more than $245,000. In reply, Southridge disputed the $245,000 amount, but it made no claim that the tendered securities were worth $4.5 million.

Supreme Court granted a temporary restraining order on May 18, 2011, enjoining Pine Street from seeking to enforce the judgment. By order dated September 7, 2011, the court granted Southridge's motion to enjoin Pine Street from enforcing the judgment pending the determination as to whether the award had been satisfied (2011 NY Slip Op 33643[U] [2011]). The court first noted that Southridge's motion did not seek a ruling whether it had already satisfied the judgment, although it evidently intended to seek such a ruling, and that "Pine Street never questioned the adequacy of Southridge's payments in satisfaction of the award, either before the arbitrator or before this Court, until about a year after those payments were made" (*id.* at *3). The court further found that "the securities that would satisfy the in-kind portion of the judgment should have been 60% of Pine Street's security interests in [the fund] as of January 18, 2010" since the in-kind portion "did *not* specify that the securities had to equal a particular dollar amount" (*id.* at *4). Having defined "in kind" in that manner, the court concluded that the record was insufficient to determine whether the securities rendered by Southridge in the spring of 2010 represented at least 60% of Pine Street's interests in the fund as of January 18, 2010. The parties were directed to settle an order and appear for a conference on October 6, 2011. Pine Street thereafter filed a notice of appeal.

In a letter dated September 28, 2011, Pine Street, through its attorney, communicated to the court that, "with a full reservation of all of its rights," it did not intend to further litigate the issue of whether Southridge had complied with the court's directives, i.e., satisfied the arbitration award, but would pursue its position on appeal. On October 6, 2011, the court held a conference during which the parties agreed that a satisfaction of judgment should be entered and the case closed, subject to any determination made concerning the order on appeal. On the same

day, the court entered an order directing Pine Street to submit a satisfaction of judgment on notice. Pine Street filed a notice of appeal from that order.

As a threshold matter, we begin by observing that a party may oppose an arbitral award either by motion pursuant to CPLR 7511 (a) to vacate or modify the award within 90 days after delivery of the award or by objecting to the award in opposition to an application to confirm the award notwithstanding the expiration of the 90-day period (*see Matter of Brentnall v Nationwide Mut. Ins. Co.*, 194 AD2d 537, 538 [2d Dept 1993]). Here, respondent did neither. Indeed, it was petitioner who appealed the lower court's refusal to enforce the judgment. Under such circumstances, contrary to our dissenting colleague, we do not have the authority to grant a nonappealing party relief that it did not seek by vacating a judgment entered against it (*see Hecht v City of New York*, 60 NY2d 57, 61-62 [1983]). Moreover, we are not empowered to remit the matter to the arbitrator for clarification (*see Matter of Plein [Charchat]*, 53 Misc 2d 162, 164-165 [Sup Ct, NY County 1966]).

Where a dispute exists as to the meaning of an arbitration award that has been confirmed in a judgment, it becomes "the Court's function to determine and declare the meaning and intent of the arbitrator[ ]" (*Board of Educ., Farmingdale Union Free School Dist. v Farmingdale Fedn. of Teachers*, 92 AD2d 599, 601 [2d Dept 1983] [internal quotation marks omitted]). To that end, a court may review the text of the arbitrator's award in conjunction with whatever findings, if any, the arbitrator has made (*see id.*; *International Assn. of Machinists, Lodge 917 v Air Prods. & Chems., Inc.*, 341 F Supp 874, 877 [ED Pa 1972]). In so doing, a court should adopt the most reasonable meaning of the text by avoiding any potential interpretations of the award that would render any part of its language superfluous or lead to an absurd result (*cf. Matter of Tamaron Invs. [Raia]*, 167 Misc 2d 125, 128 [Sup Ct, NY County 1996]; *New York City Omnibus Corp. v Quill*, 189 Misc 892, 894 [Sup Ct, NY County 1947], *affd* 272 App Div 1015 [1st Dept 1947], *affd* 297 NY 832 [1948]). Furthermore, the award must be interpreted in the light most favorable to the prevailing party (*see D.E.I., Inc. v Ohio & Vic. Regional*, 296 F Supp 2d 881, 885 [ND Ohio 2003], *affd* 155 Fed Appx 164 [6th Cir 2005]).

Here, there is no dispute that the award was satisfied in part. Southridge made a $3.1 million cash payment in fulfillment of its obligation to pay "forty percent (40%) of the balance of [Pine Street's] interest in [the fund] in cash." What is at issue is

Supreme Court's interpretation of the phrase "complete the redemption of [Pine Street's] interest in [the fund] in cash or in kind" in the arbitral award as permitting Southridge to satisfy its obligations by tendering "60% of Pine Street's security interests in [Southridge] as of January 18, 2010."

■ The arbitral award makes clear that the arbitrator found that the balance of Pine Street's interest in Southridge, after Southridge made a partial redemption of $88,797.66, was $7.9 million. Significantly, the arbitrator emphasized specific dollar amounts in the award. Nowhere did he equate Pine Street's interest with a certain amount of stock.[2] Thus, Supreme Court's conclusion that Pine Street's interest consists of a certain amount of stock was in error.

Supreme Court also erred by finding that the term "in kind" did not have to equal a certain dollar amount. The term "in kind" has a well defined legal meaning: "[i]n a similar way; with an equivalent of what has been offered or received" (Black's Law Dictionary 857 [9th ed 2009]). Given that the arbitrator defined Pine Street's interest in Southridge as a fixed dollar amount equaling around $7.9 million redeemed and that Southridge owed 60% of that amount, it is inconceivable, viewing the award in the light most favorable to Pine Street, that an award in Pine Street's favor would allow Southridge to pay Pine Street less than 60% of $7.9 million. The patently absurd result would be to give Southridge the choice of paying $4,792,596.11 (along with legal interest on that amount) in cash or far less than that "in kind." We do not believe that that is the result intended. Rather, we conclude that Southridge was given the option of redeeming Pine Street's interest by tendering either $4,792,596.11 (along with the corresponding legal interest due on that amount) in cash or an amount of whatever stock it held that would equal $4,792,596.11 (along with the corresponding amount of legal interest due on that amount).

■ We note that Supreme Court expressed concern that Pine Street waited one year after Southridge made the payments and the transfer of securities—i.e. until the award had been confirmed—to claim that the award had not been satisfied. However, Pine Street had the right to decide when to bring its confirmation action within the statute of limitations period.

---

**2.** Tellingly, the arbitrator awarded Pine Street interest. If he did not equate Pine Street's interest in Southridge with a specific dollar amount, we do not understand why he would have awarded Pine Street interest.

Similarly, Pine Street was not required to voice, in its petition to confirm, its dissatisfaction with the amount it received in payment from Southridge (*see* CPLR 7510). "[I]t is irrelevant in a proceeding to confirm an award whether there is a dispute about whether the award has been fully satisfied" (*Matter of Bernstein Family Ltd. Partnership v Sovereign Partners, L.P.*, 66 AD3d 1, 8 [1st Dept 2009]). A party may very well claim that an award has not been satisfied before bringing suit or in its petition for confirmation; however, it does not have an obligation to make the claim before seeking enforcement of the award (*id.*).

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered October 6, 2011, which, in this CPLR article 75 proceeding, directed petitioner, in accordance with a prior order, same court and Justice, entered September 12, 2011, to submit a satisfaction of judgment on notice, and the September 12, 2011 order, should be reversed, on the law, and the matter remanded for a hearing to determine the value of the stock tendered to petitioner by respondent Southridge Partners, L.P. and for entry of a money judgment in petitioner's favor in the amount, if any, of the difference between the value of the stock as determined and $4,792,596.11 with the corresponding legal interest that Southridge was obligated to pay petitioner within 90 days of the issuance of the January 18, 2010 arbitration award.

Tom, J.P. (dissenting). The culmination of more than two years of litigation that followed the arbitration award rendered in this proceeding is a judgment in favor of petitioner in the total sum of $505.[1] This is an anomalous outcome in a dispute concerning the redemption of an investment account assessed by the parties at some $8 million. The paltry judgment results from the absence, in the arbitration award, of any valuation of the securities held in the investment account on which judgment could be entered.

This omission is not the consequence of any inadvertence by the arbitrator, but rather results from his recognition that a monetary award was beyond his power to make—because

---

**1.** The judgment provides, in material part, that petitioner shall recover "forty percent of the balance of Petitioner's interest in Southridge Partners L.P. as of the date of the Award in cash, plus the remaining sixty percent of Petitioner's interest in Southridge Partners L.P. as of the date of the Award in cash or in kind, plus interest at the legal rate on said balance remaining as of October 1, 2009, together with costs and disbursements in the amount of $505.00 as taxed by the Clerk, for the total amount of $505.00, and that Petitioner have execution therefor."

petitioner did not submit the issue of valuation to arbitration and perhaps because, under the rules of the American Arbitration Association, a commercial claim seeking more than $1 million is required to be heard before a panel of three arbitrators unless the parties consent to submit their dispute to a single arbitrator (*see Ansonia Copper & Brass, Inc. v Ampco Metal SA*, 419 F Supp 2d 186, 188 [D Conn 2006]). Finally, as the transcript of the proceedings makes clear, the limit on the arbitrator's authority is the immediate result of petitioner's representation, both on its application for arbitration and on its statement of claim, that it sought a "non-monetary" award.[2]

If the award is construed as requiring payment of a particular amount, as the majority holds, then the award is in excess of the arbitrator's power, because the issue of valuation was not submitted for his determination, and since the award neither identifies the securities that will satisfy respondents' obligations to petitioner nor establishes any value that those securities must have, it represents so imperfect an execution of the arbitrator's authority that no final and definite award on the subject matter was rendered (CPLR 7511 [b] [1] [iii]). Under either interpretation, the award must be vacated.

At the outset of the hearing, the arbitrator briefly addressed petitioner's claim, noting that "they weren't seeking a particularly monetary [sic]—I know that causes a problem that I got to dance around and deal with." Later, he reminded the participants that

> "there is a different problem here that everybody has been tap dancing around for good and sufficient reason because, one, it shouldn't be on the record and, two, it is not before me.
>
> "But the elephant in the room is the value that was placed on the position and who and why. That is the elephant in the room. And you have—I congratulate both counsel for that, avoiding the elephant in the room . . . you've made sure that that's not in front of me . . . ."

Thus, it is clear that the arbitrator recognized that the question of the valuation of petitioner's interest in the investment fund was not before him and that he lacked the power to determine the issue.

---

**2.** Since petitioner classified its claim as non-monetary, the question of whether the dispute should be heard before one or three arbitrators was never reached.

Notwithstanding the infirmity of the award, the majority, under the pretext of interpretation, bestows on petitioner a monetary judgment in a sum that the arbitrator did not award and, within the exercise of his power, could not award, granting petitioner the very relief it purported not to seek.[3] The majority thereby makes a judicial determination of a controversy that the parties, by agreement, consigned to the arbitral forum, in violation of the rule that in deciding any issue in connection with arbitration "the court shall not . . . pass upon the merits of the dispute" (CPLR 7501; *see Matter of Beleggingsmaatschappij Wolfje, B.V. v AES Ecotek Europe Holdings, B.V.*, 21 AD3d 858 [1st Dept 2005]; *Matter of Sims v Siegelson*, 246 AD2d 374, 376 [1st Dept 1998]).

It is well settled that an arbitrator may not rule on a matter not submitted for determination (*Matter of Joan Hansen & Co., Inc. v Everlast World's Boxing Headquarters Corp.*, 13 NY3d 168, 173 [2009]). It is axiomatic that if an issue was not ruled upon by the arbitrator, a court cannot, under the guise of confirmation pursuant to CPLR 7511, decide the issue and enter judgment thereon. Even if the defect in an award is limited to the inability to decipher the meaning and intent of the arbitrator, the award must be vacated—precisely the result reached in *Board of Educ., Farmingdale Union Free School Dist. v Farmingdale Fedn. of Teachers* (92 AD2d 599 [2d Dept 1983] [advisory arbitration]), cited by the majority, which likewise involved the scope of the arbitrator's authority. Nor is clarification of an issue that was not before an arbitrator available, even if it involves the same contract provision at issue (*Matter of Joan Hansen & Co., Inc.*, 13 NY3d at 174). The parties' remedy is to raise the undecided issue in a new arbitration proceeding (*see id.* at 175 n 3).

As the Court of Appeals has observed, arbitration is favored and encouraged to promote the announced policy of conserving judicial resources, as well as the time and resources of the parties to the arbitration agreement. Consistent with this policy, the courts are accorded only a limited role in the arbitral process. To avoid becoming embroiled in issues collateral to the dispute that the parties have agreed to arbitrate, the courts are admonished " 'to prevent parties to such agreements from using the courts as a vehicle to protract litigation' " (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d

---

**3.** Supreme Court properly rejected a judgment proposed by petitioner in the amount of $7,990,660.19.

91, 95 [1975], quoting *Matter of Weinrott [Carp]*, 32 NY2d 190, 199 [1973]). As this Court has observed, the minimal oversight of the arbitral process assigned to the courts is intended to "preclude[ ] the parties to an arbitration agreement from simultaneously pursuing their claims before the courts and thus playing one forum off against the other" (*Avon Prods. v Solow*, 150 AD2d 236, 238 [1st Dept 1989]). The majority's disposition does not advance this salutary purpose by allowing the parties to this proceeding to engage in extensive litigation over the very dispute they agreed to submit to arbitration.

With respect to vacating an award as nonfinal or indefinite, the Court of Appeals has stated, "An award is deficient in this regard and subject to vacatur only if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy" (*Matter of Meisels v Uhr*, 79 NY2d 526, 536 [1992]). The award rendered in this matter directs respondents to pay 40% of the value of petitioner's interest in the investment fund in cash within 30 days of the date of the award and 60% "in cash or in kind" within 90 days. The parties dispute whether securities transferred to petitioner as in-kind payment of its 60% interest are of sufficient value to discharge their obligations under the award. Because the award neither provides guidance as to the value of the in-kind transfer nor indicates the arbitrator's intent as to the identity and number of the securities petitioner is to receive, the award fails to resolve their dispute and, further, creates a new controversy concerning whether respondents have satisfied their responsibilities under the judgment entered on the award. Thus, it is deficient and subject to vacatur.

Accordingly, I would vacate the judgment confirming the award and the judgment entered thereon.

ANDRIAS, SAXE and FREEDMAN, JJ., concur with ACOSTA, J.; TOM, J.P., dissents in a separate opinion.

Orders, Supreme Court, New York County, entered October 6, 2011 and September 12, 2011, reversed, on the law, and the matter remanded for a hearing to determine the value of the stock tendered to petitioner by respondent Southridge Partners, L.P., and for entry of a money judgment in petitioner's favor in the amount, if any, of the difference between the value of the stock as determined and the corresponding legal interest that Southridge was obligated to pay petitioner within 90 days of the issuance of the January 18, 2010 arbitration award.